Powell *vs.* Perry.

63 417
f114 651
63 417
115 309

1. First original process being directed to the sheriff of the county where suit is brought, and the second original to the sheriff of that county and of the county wherein the defendant to be served with it resides, the direction is sufficient, and service in each instance made by the proper sheriff or his deputy is legal.

2. Judgment recovered during the late war against three, one of whom was absent in the military service, was not vacated as to the other two by being set aside as to the soldier on a subsequent proceeding by him under special legislation applicable to the state and Confederate military. Though called an appeal, the subsequent proceeding was in the nature of a new trial or an affidavit of illegality as to the soldier alone; and neither a new judgment or execution was necessary as to the other defendants.

3. Execution within seven years after judgment, the sheriff's receipt to the plaintiff for costs, entered on the execution within seven years after it issued, a sheriff's return of *nulla bona* within the next seven years, and a levy within the next seven, will prevent dormancy of the judgment.

4. Omission of the execution to describe the defendants as makers and indorser, respectively, is amendable, and need not work reversal in the supreme court unless attention was called to it at the trial of the claim.

5. A judgment entered up and signed by counsel on the verdict of a jury need not be spread upon the minutes.

Process. Appeal. Judgments. Practice in the Supreme Court. Practice in the Superior Court. Before Judge Hood. Terrell Superior Court. May Term, 1879.

On August 14, 1877, the execution mentioned in the opinion was levied by the sheriff of Terrell county upon certain lands as the property of James W. Powell. To a part of this land a claim was interposed by Thomas W. Powell. When the issue thus formed came on for trial, it was agreed that the court should determine the case under the law, and that a verdict should be taken in accordance with his decision. The facts sufficiently appear in the opinion. The court held that the lien of the judgment and execution was valid and subsisting, and that the property claimed was subject thereto. To this judgment claimant excepted upon the following grounds:

1. Because the court held that the lien of the judgment and execution was valid and subsisting, and that the property levied on was subject thereto.

2. Because the court erred in refusing to dismiss the levy upon motion of claimant, based on the following reasons:

(1). Because it appeared from the records and papers in evidence that the process to the second original for Terrell county did not follow the original.

(2). Because the certified transcript from the records of Calhoun county showed that no judgment had ever been entered upon the minutes of said court in said case.

(3). Because said transcript further showed that an appeal had been entered by Hodnett, one defendant, and no second verdict or judgment was had against the other defendants, Powell and White.

(4). Because the execution was issued before the time allowed by the law then in force had expired, and before Hodnett returned from the war.

(5). Because the judgment was illegal and void, and the execution dormant.

(6). Because there was no legal service on Powell.

Error was assigned upon each of the above grounds of exception.

GUERRY & PARKS; S. D. IRVIN, for plaintiff in error, cited, besides the Code, 16 *Ga.*, 194; 8 *Ib.*, 335; 38 *Ib.*,

103; 21 *Ib.*, 359; Cobb's Dig., 494, 471; 6 Tenn. R., 525; 3 Bac. Abr., 718.

C. B. WOOTEN; L. C. HOYL, for defendant, cited the act of 1861, and 62 *Ga.*, 103.

BLECKLEY, Justice.

1. Upon a promissory note made by Robert White and William H. Hodnett, and indorsed by James W. Powell, suit was brought by John B. Perry, in August, 1863, to Calhoun superior court; the declaration describing White and Hodnett as makers, the former of Stewart county, the latter of Calhoun county, and Powell as indorser, of Terrell county. There were a first original and two second originals, each with process annexed, and each process having in the margin, "Georgia, Calhoun county." The direction of the first original (served on Hodnett) was, "To the sheriff of said county;" the direction of the second original which was served on White was, "To the sheriff of said county and of Stewart county;" and the direction of the second original which was served on Powell was, "To the sheriff of said county and of Terrell county." The direction of each was sufficient and the service was valid. Each defendant was served by the sheriff or the deputy sheriff of his own county. The direction of the first original was not in the precise terms of the Code; it should have been to the sheriff or his deputy. Code, §3334. But the general rule is that whatever the sheriff has authority to do may be done by and through his deputy (62 *Ga.*, 207); as a consequence of this rule, a direction to the sheriff for the purpose of service is virtually a direction to his deputy also. What direction a second original process shall have is not expressly laid down. The sense and reason of the thing is that it should be to the sheriff or deputy of the county in which the defendant who is to be served by means of the second original resides. Here there was enough in the direction to give the proper officer authority

to serve, and the service, in each instance, was by the proper officer.

2. At March term, 1864, a verdict was rendered for the plaintiff, and judgment thereon was signed against White and Hodnett as makers, and Powell as indorser. Execution upon this judgment was issued on the first of April, 1864, against the three defendants, generally, without distinguishing them as makers and indorser. In 1866, the defendant, Hodnett, under special legislation applicable to state and Confederate soldiers, applied for and obtained an appeal (so called) upon the ground that he had a meritorious defense, and was absent in the military service when the verdict and judgment were rendered. A trial took place as to his liability and he was discharged. (See 38 *Ga.*, 103). No order was had vacating the original judgment as against White and Powell. We think that said judgment was not vacated as to them by Hodnett's so called appeal, the same being in the nature of a new trial, or illegality, as to him alone, and not of an appeal proper. Acts of 1861, p. 61 ; Convention of 1865, journal, 140. We think, also, that after Hodnett's discharge, it was not necessary to enter up a new judgment or issue a new execution, the record being complete without such formality. No doubt that an appeal proper, when entered by one defendant alone, grasps the whole record, and that the final judgment on the appeal trial is the one which is to fix the rights and liabilities of all the parties to the suit. Code, §§3619, 3620, 3627. But it is plain that nothing is an appeal proper except where all the co-parties are on the same footing, and equally free to join in the appeal or not. The special legislation enacted during the war and after the war, in behalf of absentee soldiers, and by virtue of which a judgment could .be re-examined on the entire merits of the original case, was not intended to fit into the general appeal system, nor was it intended to be a ripping up agency beyond what was necessary to free soldiers themselves from unjust or improper judgments rendered against them during their absence in

the military service. Those who happened to be co-defendants with them could protect themselves in the first instance, and did not come either within the letter or the spirit of the peculiar and anomalous legislation. If a judgment was against several, only one of whom was a soldier, and was left standing by the others, it was rightfully against *them*, though it might turn out to be wrongfully against him. and the only requisite alteration would be to free him from its force and effect. This could be done by excision as well as by complete dissection—by simply cutting him away from his associates, and leaving them incorporated in the judgment and bound by it. Generally, it is true, a judgment has been regarded as an entirety, and setting it aside as to one co-party has been treated as vacating it as to the rest. But there is nothing in the nature of the thing which involves such a consequence; and in modern Georgia practice a new trial can be granted as to one joint defendant and denied as to others; so, too, a judgment can be as completely moulded at law as can be a decree in equity. The operation of moulding may take place in cutting down or expunging, no less than by original construction or shaping. Here, when Hodnett, the soldier, was relieved, the record, taken altogether, showed the exact change which had been made in the original judgment; and this manifestation could always be applied afterwards both to the judgment and the execution. Read as a whole, the record showed just what it would have shown in effect if Hodnett had defended successfully in the first instance, and the others had not. At a casual view it might appear that, as the suit was in Calhoun county, and as Hodnett was the only one of the three defendants who was a resident of that county, the ultimate failure of the action as to him would be fatal to the jurisdiction in that county as to the others. But he was one of the makers of the note declared upon, and was a joint promissor with White, the other maker. This was the jurisdictional fact as to White (Code, §§3347, 3404), and the fact was in nowise changed by anything that

afterwards ensued. The suit was located in the county in which Hodnett, one of the makers of the note, resided. This residence also gave jurisdiction over Powell, the indorser; for the indorser can be sued in the county of the maker, and in the same action with him. Code, §§2782, 3353, 3405. Jurisdiction being dependent on the residence of one of the three defendants, and on his relation to the other two as shown by the note and its indorsement, and the ultimate failure of the action as to the one not negativing either the residence or the relation, such failure does not negative the jurisdiction.

3. Upon the execution was an entry by the sheriff, dated March 21st, 1865, receipting the plaintiff for costs; also an entry of *nulla bona* by the sheriff of Calhoun county, dated August 21st, 1870; also an entry by the sheriff of Terrell county, of a levy upon certain lands (the same now claimed), dated March 14th, 1877. It is said the judgment is dormant because there was property in Terrell county which might have been seized when the return of *nulla bona* was made in Calhoun county, and because neither of the defendants resided in the latter county. Dormancy does not depend upon extrinsic facts, but upon whether an entry within every period of seven years by an officer authorized to execute and return the execution, is wanting. Code, §29;4. The execution was directed to all and singular the sheriffs of the state, and it issued from the superior court of Calhoun county. Most certainly the sheriff of that county was authorized to execute and return it. There could not be an entry more precisely within the scheme of the statute.

4. We notice that the execution fails to follow the judgment by describing the defendants as makers and indorser, respectively, as the Code, in section 3636, requires. This defect, however, is amendable; and though if the amendment were actually made, the levy would fall (Code, §3495), still a sale would be valid under the execution as it now is. Such an infirmity does not render the writ void, and a levy

is not defeated on account of it, unless the defect is duly pointed out and insisted upon before a sale takes place. We see no evidence in the record that any objection was raised at the trial to the execution on acount of this specific infirmity, or that the court made any ruling with respect to it. For this reason the defect need not, and will not, work a reversal of the judgment condemning the property. The claimant had a right to waive such a blemish, and did waive it unless he brought it to the attention of the court; and it does not appear that he directed the court's attention to it.

5. The point that the judgment upon which the *fi. fa.* was founded was not entered on the minutes of the court admits of this brief and decisive answer: there is no law which requires a judgment signed by counsel upon the verdict of a jury to be put on the minutes. It is not even requisite that such judgments be entered up and signed during the term, but four days are allowed for the purpose after the court has adjourned. Code, §3568. The judgment goes upon the general record which the clerk is required to keep, and in that way appears as a part of the record of the case. It need not, and in some instances could not, appear on the minutes, the minutes being closed when the term ends.

Judgment affirmed.