Judge Wright
delivered the opinion of the court:
The first question discussed involves the inquiry, whether a suit upon an injunction-bond can be sustained without averring that execution bad issued against the principal debtor, for the sum claimed. By section 27 of the act regulating judgments and executions, 29 Ohio L. 108 (identical with the act in force when this bond was taken, 2 Oh. O. Stat. 1302), it is provided, that in all cases where judgment shall be rendered in the Supreme Court against the appellant, or an injunction is dissolved, the successful party shall, before he brings suit upon the appeal or injunction bond, issue execution against the principal debtor; and if it appear by the return, that he has not sufficient to satisfy the execution, he may then commence suit upon the injunction bond, and take judgment for the penalty, which maybe discharged on the payment of the original judgment or decree, with interest and costs. It is urged that the provision so changes the common law rule, that a declaration upon an injunction bond does not show a right in the plaintiff to sue, unless it contain an averment that execution has been issued and has been returned.
What class of eases was in the contemplation of the general assembly in enacting this law? Evidently those where the relation of creditor and debtor subsisted, and as to which a judgment or decree was had on which an execution might issue. The provisions requiring an execution against the principal debtor, and for 348] discharging the bond on paying the original ^judgment or decree with interest and costs, make this clear to our minds ; but they do not stand alone. The chancery act contains express provisions for three classes of injunction. 1. To stay waste. 2. To stay proceedings at law, before or after judgment, 29 Ohio L. 87. 3. In all other cases where it is usual for courts of equity to interfere by injunction, 29 Ohio L. 89.
There is no limitations in our statutes upon the issue of the first class of injunctions, and their issue is regulated by the common usage of chancery. In the second class, it is provided, that the injunction shall not operate until bond be given with security conditioned for the payment of all money and costs due or to become due in the. suit or judgment enjoined, and all moneys decreed against the complainant in case the injunction be dissolved; and if the suit enjoined was for the recovery of money only, the court on dissolving the injunction is required to decree the plaintiff at *353 law the amount he received, at law, with interest and costs and five per cent, penalty. The court in allowing the last class of injunctions (which embraces the one in controversy), is authorized to impose such conditions upon parties obtaining them, as shall seem equitable. Our chancery courts are authorized to enforce compliance with their decrees for the payment of money by the common process of execution issued by the courts of law. Where the injunction operates upon a money demand and delays its payment, it is without effect, except security be given for the debt, and the costs to accrue with interest, in a penalty to cover contingencies. When the party was so abundantly secured, the legislature seemed to think a slight protection to the security called for, and provided that in case the bond become forfeit, the obligee should, as he had a judgment already against the person in equity bound to pay, first take his execution against him, exhaust his property, if he had any, and only resort to the bond, by suit against the security, in case of failure to make the money. Bonds given under our laws to remove causes from the courts of common pleas, after judgment, by appeal to the Supreme Court, are required as seeuritj'- for the judgment to be recovered in the appellate court. The injunction and the appeal both operate to delay creditors, in cases where the amount has been reduced to certainty by judgment, and is capable of execution by the usual process. These two cases were, therefore, not only on the same footing in reason and the nature of things, but, in our understanding, are *the only two classes em- [349 braced in section 27 of the judgment and execution law referred to. By no other construction can we give effect to the obvious intention of the legislature. This view is strengthened by the consideration that suits on appeal and injunction bonds are coupled together in the section; that it is required, upon judgment recovered in the appeal case, on dissolution of the injunction, where judgment had been before recovered, and execution stayed, that execution shall be first issued against the principal debtor. This can not have been intended to embrace a case of injunction -to stay waste, or any other kind of injunction than one restraininga recovery at law, because, in such case, there would be no judgment upon which to issue execution. But it is urged that the legislature has expressly provided that in all cases of injunction or appeal, the execution shall issue against the principal debtor, and that it would oppose the plain and obvious meaning of the words used, *354 to limit them so as to except any case from the general provision. The proper answer to this is, that courts are not to presume the legislature intend to require an impossible, vain, or useless thing to be done; or impose a limitation to the remedy upon a legal obligation, that would defeat the very object for which it was exe cuted. It would be useless, „if not legally impossible, to issue execution when there was no judgment or decree; and if without execution, the obligee of an injunction bond is without remedy, the only object of the bond, security to a party from damage by the injunction, is defeated. "We, therefore, construe the act as if it read, in all cases of injunctions where there is a judgment at law, or deci’ee for a sum certain, an execution shall issue on the judgment or decree before suit is brought upon the bond.
The distinguished counsel, who has argued this cause for the defendants, seems himself pressed with the difficulties of the construction he advocates. The statute expressly provides for the-discharge of the injunction bond in the cases contemplated upon the payment of the original judgment or decree. It would seem to follow that cases, where there was no original judgment or decree, were not within the view of the law-maker. Yet the law authorizes injunctions in cases where there is no original' judgment or decree, upon such conditions as shall seem to the court equitable. It seemed to the court of common pleas equitable to allow the injunction in the case under consideration, upon bond S50] and surety, to indemnify the enjoined *party from injury to result from the interruption of his business, in case it should be adjudged by the court that he was right. The injunction is dissolved, and no other decree is rendered than simply a decree for the costs of the suit, which are paid. The injury against which the bond was intended as indemnity, is collateral to the inquiry in. the injunction suit, and remains unnoticed in the decree.
Counsel admits it possible that in such cases injury maybe sustained beyond the costs, but urges that, inasmuch as they were not included in the decree, it is too late to ascertain and recover their amount in the suit on the bond. It is, indeed, the usual method of ascertaining the extent of injury in the common law courts; but if one of the conditions of the bond sued upon, refer to an injunction allowed by a chancellor, the rule, it is urged, is to be departed from.. To avoid the palpable injustice of limiting such bonds to the mere payment of taxable costs, to the exclusion of the prin *355 cipal matter intended to be secured, it is urged that they must be-assessed by the chancellor with the aid of a master or a jury, and a decree entered for the amount, and execution issued before resort can be had to the bond. This method is unusual. It is less convenient to assess damages in chancery than at law. It would seem less just to the security on the injunction to assess the amount to be recovered of him, in the chancery suit to which he is not a party, and thus conclude him, than to leave the question open and offer him an opportunity to litigate, and see that the amount is fairly and truly adjusted in the suit on the bond to which he is a party. Besides, th e matter is not within the case made in the proceedings and issues, and if inquired into, would require a new and supplemental proceeding. If, therefore, we were to admit that the chancellor might have pursued the course suggested (though upon that point we do not intend to express an opinion) the objection by sureties, that a course of proceeding least advantageous-to themselves had not been pursued, would challenge little favor. Moreover, the law does not require of the chancellor to assess damages in such cases; it is unusual and inconvenient to do so; it was not done in the case under consideration. The court, adopting the common usage of chancery, dissolved the injunction, and left the parties interested to litigate and adjust the matter at law. In doing so, we suppose the rights of the parties to the bond were not effected, but left to be governed by the rules of the common law.
*The next question arises upon the third plea. It sets up [351 as a bar to the suit the payment of the costs decreed in the chancery suit. If we are right in the view taken of the declaration, that it is not essential to the plaintiff’s title for him to aver the issue of an execution against the principal obligor, then the matter of this plea does not reach the entire action, but looks only to a portion of it. It is not directed to either breach assigned, and of course, if it neither answers the right set up in the declaration, the execution and legal obligation of the bond, it must answer the breaches assigned, or one of them, or be bad as a bar. The breach is, that the injunction was dissolved and the parties injured by the loss of labor and materials. It is no answer to this to say the obligor paid the costs decreed, paid a sum which it is not urged he withholds.
The remaining question regards the sufficiency of the first plea, which is, in substance, that while the chancery suit was still pending *356 after the date of the bond declared upon, the court continued the injunction upon condition that another bond should be given in a larger sum, as an indemnity to the respondents, in “ the place of, and as a substitute ” for the one declared upon, which was so delivered and accepted. Counsel for the plaintiffs argue, upon this order for a new bond, as if it was described to be for mere additional security. It is not so. The allegation is, that the order was made and the new bond delivered and accepted as a substitute for the first one. If the court had power to make the order for a new bond, it was in fact delivered and accepted as a substitute for the old one, and we do not perceive how the old bond can be held obligatory. We deem it within the province of a chancellor, in continuing an injunction, to require additional, or new security, or a bond with new and enlarged conditions, calculated completely to indemnify the parties affected, if the injunction bo finally adjudged to have been allowed without right. Having the control of the papers and parties in the ease, the most familiar province of a chancellor is to do complete justice between the parties, and power can not be denied in making the interlocutory order preliminary to the final decree short of what is yielded to him in pronouncing the final decree.
But it is said the court has not the power to accept the second bond as a satisfaction of the first, that none but the obligee, the person having the legal interest in it, can discharge it. So far •352] from this being true, we all know it to be *an undisputed head of equity jurisdiction to order the surrender of deeds and other instruments, to cancel them against the will of the obligee, and to compel obedience to the order by imprisonment, if need be. The plea asserts the order for the bond to be one for a substitute, .and the acceptance of the second bond to have been in lieu of the first. This the demurrer ‘admits to be true. If, therefore, such order could be legally made, and the bond was executed and accepted according to the order, the question is at rest. It is said the acceptance is averred to have been by the clerk, and not by the obligee. That is true, and such was the order of the chancellor-as set out, to give to the acceptance of the clerk, and the fact •does not affect the case.
It is still further objected to this plea, that it alleges the order made at October term, 1831, as a condition precedent to the continuance of the injunction, and the bond not executed until Feb *357 ary following, and therefore the bond was not given in compliance with the order. This objection supposes this court can take judicial notice of the length of the October term of the common pleas in 1831. How can we know the term, commencing in October, did not continue until February ? By the allegations of agree - ment of the parties to the suit, we have neither in the case before us. If such, however, was the decretal order, the objection would fail for the reason given, and for another one, that the plea avers-the bond was given in compliance with the decree. If the factsvaryfrom those alleged in the plea admitted true by the demurrer, the plaintiff must open some other way for considering the objection than the one before us.
We think the declaration and the first plea of the defendant good. The second plea we hold to be bad. But the plaintiff has-demurred jointly to both pleas, and as one is good, the rule in such cases overrules the demurrer, and entitles the adverse parties to a judgment. There is, however, an application for leave to amend. Leave is giyen the plaintiff to withdraw his demurrer, and reply on paying all the costs since filing the demurrer.