Hadley v. Bernero.

LEO G. HADLEY et al., Respondents, v. DAVID BERNERO et al., Appellants.

St. Louis Court of Appeals, December 16, 1902.

1. **Justices' Courts: UNLAWFUL ENTRY AND DETAINER: APPEAL TO CIRCUIT COURT.** An appeal from the judgment of a justice in an unlawful entry and detainer action is returnable to the circuit court within six days after the rendition of the judgment, if the judgment is rendered during a term of the circuit court to which the appeal is taken.

2. **Term of Court: DEFINITION OF: VACATION: DEFINITION OF: STATUTORY CONSTRUCTION.** The word "term," in the statute on the subject, signifies the entire period from the first day of the term, as fixed by law, to its close; and the word "vacation" signifies the period between the final adjournment of one term and the beginning of another.

3. **Appellate Courts: JUDICIAL NOTICE: CIRCUIT COURTS: PRACTICE, TRIAL: PRACTICE, APPELLATE.** Appellate courts will take judicial notice of the terms of the circuit courts as provided by the statutes, but not when terms are ended by final adjournments, although any court may take notice from its records of its own session; this court must presume that the circuit court rightly exercised jurisdiction.

Hadley v. Bernero.

4. **Appeal Bond:** SUMMARY JUDGMENT: ERROR: SURETY, LIA-BILITY OF. A summary judgment against a surety on an appeal bond, in an unlawful entry and detainer case, is erroneous, but the judgment need not be reversed as a whole for that reason, but may be treated as a nullity against the surety.

5. **Lease:** STIPULATION TO DELIVER PREMISES: COVENANT: RIGHTS OF REVERSIONER. A stipulation in a lease that, if a sale of the property shall be made during the continuance of the lease, the lessees will vacate and deliver up possession on thirty days' notice in writing, is a covenant which runs with the reversion, and enures to the benefit of the grantee of the fee.

6. **Judgment:** NOMINAL DAMAGES. A judgment for twice the value of the monthly rents and profits of the premises is rightly given in an unlawful detainer case, for the wrongful detention of the premises after notice to vacate, and the stipulation made by the parties in the case at bar did not confine the damages for detention to a nominal sum.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Vernon W. Knapp* for appellants.

(1) All of the evidence presented at the trial in the circuit court is preserved in the bill of exceptions, and the only evidence therein of the amount of damages is contained in the agreement that those damages amounted to one dollar. It was therefore error to allow a greater amount of damages in the verdict. Moore v. Dixon, 50 Mo. 424; Balch v. Myers, 65 Mo. App. 422. (2) The statute concerning bonds on appeals from justices court in suits of unlawful detainer does not authorize a summary judgment against sureties on the appeal bond as in ordinary cases brought up from justices. Powell v. Camp, 60 Mo. 569. It was therefore error to give judgment as was done in this case against the defendants and the surety on the bond, and the judgment ought to be reversed on that account.

*Jesse A. McDonald* for respondents.

(1)    The clause in the lease providing for the termination of the tenancy is a condition in the nature of a covenant which runs with the land, and the language employed shows clearly the intent of the parties that it should go with the reversion.   Roe v. Hayley, 12 East. 464; Callan v. McDaniel, 72 Ala. 96; Same Case, 75 Ala. 327.   (2)   And otherwise the condition would be ineffectual, as it only becomes operative in the event of a sale, and after a sale the lessor, by reason of lack of interest, could not exercise the option of terminating the lease.   Griffin v. Barton, 49 N. Y. Sup. 1021.   (3) There is no ambiguity in the clause in the lease.   It is a covenant for the benefit of the owner of the reversion and he is the person by whom the notice should be and was given.   Taylor v. Frohock, 85 Ill. 584; Johnston v. King, 83 Wis. 8.   (4)   And the forcible entry and detainer statute provides that "the determination of any lease by forfeiture shall, within the purview of this chapter, have the same effect as if the term thereby created had expired."   Sec. 3354, R. S. 1899.   (5) The defendant's term having been brought to an end on July 31, 1901, by the plaintiff's notice, their holding over that day made them guilty of an unlawful detainer. "If a lease does not require any particular form of notice of the election to terminate.it, a notice in general terms is sufficient.   Leases for terms of years quite often confer upon the lessee an option to terminate the lease before the expiration of the term and reserve to the lessor a similar privilege.   .   .   .   Where the term was assigned by the lessee a privilege of terminating the lease conferred on the lessee inures to the benefit of the assignee; and where the reversion is conveyed a similar privilege conferred on the lessor inures to the benefit of the grantee of the reversion."   18 Am. and Eng. Ency of Law (2 Ed.), p. 630.

GOODE, J.—In January, 1899, one A. J. Geraghty, owner, leased certain premises in the city of St. Louis,

for and during the term of five years to commence July 1, 1899, to Vincent Bernero and David Bernero, and the last clause in the lease read as follows:

"It is further agreed between the parties hereto, that should a sale of said property be made during the continuance of this lease, said lessee will vacate and deliver up possession of said property upon a thirty days notice in writing, so to do."

The lessees entered into possession of the premises under this lease and were at the time of the beginning of this action, and still are, in possession. The lessees together with their subtenants, Henry Robbins and William Bedford, are the defendants and appellants in this case.

On May 28, 1901, the lessor, A. J. Geraghty, sold the premises to Bradford Schinkle. On June 5, 1901, Bradford Schinkle sold the property to Leo G. Hadley and Owen M. Dean, the plaintiffs in this action.

On the twenty-eighth day of June, 1901, one Manley W. Mann (as agent for plaintiffs) delivered to the lessees a paper notifying lessees to vacate and deliver up possession on or before October 1, 1901, which paper is the alleged notice under the last clause of the lease.

On the fourth day of September, 1901, plaintiffs filed their complaint before a justice of the peace for unlawful detainer, and on October 18, 1901, the justice of the peace rendered judgment against the defendants.

On the twenty-sixth day of October, 1901, more than six days after the justice rendered judgment, defendants filed their affidavit for appeal and recognizance, and on that day the bond was approved, and an order allowing the appeal was made by the justice.

At the trial of the cause in the circuit court the following agreement was introduced in evidence, to-wit:

"It is agreed between counsel for plaintiffs and counsel for defendants, that the damage to the property of defendants since August 1, 1901, is one dollar, and that a fair rental value of the premises was seventy

dollars per month on and from August 1, 1901, and is the same to-day.''

Defendants were found guilty of unlawful detainer as charged in the complaint, and plaintiffs' damages assessed at the sum of four hundred and ninety-five dollars, and the value of the monthly rents and profits at seventy dollars. The court thereupon rendered judgment that the complainants have restitution of the premises described in the complaint and recover of the defendants and Louis Bernero, surety on the appeal bond the sum of nine hundred and ninety dollars damages and also at the rate of one hundred and forty dollars per month for rents and profits from the date of the judgment until restitution be made, together with their costs and charges, and have execution therefor.

Points made for a reversal are that the circuit court acquired no jurisdiction of the appeal; that it erroneously entered judgment against the surety on the appeal bond; that the conveyance of the reversion did not transfer to the assignee the benefit of the covenant to vacate on thirty days' notice if a sale was made, and that no more than nominal damages for withholding the premises could be rightly adjudged against the defendants.

1. The jurisdiction of the circuit court is challenged on the ground that as the judgment of the justice of the peace was rendered during the October term of the St. Louis Circuit Court and eight days before the appeal was applied for and granted, the circuit court was without jurisdiction of the cause, since the statutes make appeals in forcible entry and unlawful detainer actions returnable within six days after the rendition of judgment, if the judgment is rendered during a term of the circuit court to which the appeal lies. R. S. 1899, sec. 3370.

(a) Appellants admit that no proof was offered at the trial of this cause in the circuit court, which occurred during the March term, 1902, to show said court was not in vacation on the eighteenth day of the preceding October, when judgment was given by the

justice of the peace; but they contend that the circuit court should have taken judicial notice of the fact that that day was in term time and have dismissed the appeal.

As to the meaning of the sections of the statutes bearing on this question, we think they use the word "term" to signify the entire period from the first day of a term as fixed by law to its final close, and the word "vacation" to signify the period between the adjournment of any term and the beginning of another, not merely an interval when the court is not in session from having adjourned for more than a day but not to court in course. Brayman v. Whitcomb, 134 Mass. 526; Bonson v. Schulten, 104 U. S. loc. cit. 415; State v. Derkum, 27 Mo. App. (K. C.) 628. By this construction, a temporary adjournment of the St. Louis Circuit Court would not have relieved the appellants of the duty to perfect their appeal from the judgment of the justice of the peace if given in term time, inside of six days after its rendition.

We may take notice of the terms of our circuit courts as prescribed by the statutes, and that one of the terms of the St. Louis Circuit Court began on the first Monday in October, 1901; but we can not know officially when the term finally closed. A court may take notice of its own sessions, adjournments and vacations from its records; but for some other tribunal to learn those things, evidence must be adduced, and for an appellate court to know them the evidence must be preserved. Robinson v. Walker, 45 Mo. 117; Bauer v. Cabanne, 11 Mo. App. (St. L.) 114; Dudley v. Barney, 4 Kan. App. 122; Kent v. Bierce, 6 Ohio 336.

As the trial court retained and decided this cause, we must presume it did so properly in the absence of proof to the contrary—must presume it found the appeal from the justice of the peace was in time, because taken during vacation between the October and December terms. This was ruled in Bauer v. Cabanne, supra, where it was said:

"The circuit court may rightly take judicial notice

from its own records of the times when it is in vacation and when it is in session. In the absence of any showing or suggestion that such were not the facts, we must presume, in support of the action of the court, that it did take official notice of such facts from its records.''

In Kansas City v. Clark, 68 Mo. 588, and Feurth v. Anderson, 87 Mo. 354, it was said that an appeal from an inferior court will be presumed to have been taken within the time allowed by law, when the record shows nothing to the contrary; and favorable suppositions are generally indulged to uphold the rulings of subordinate courts of general jurisdiction, those who complain of their rulings being required to make affirmative proof of the facts necessary to support an assignment of error, instead of invoking a presumption. State v. Baty, 166 Mo. 561; St. Louis v. Lanigan, 97 Mo. 175; State v. Mackin, 51 Mo. App. (K. C.) 299; State v. Brown, 75 Mo. 317; McClanahan v. West, 100 Mo. 309; Hamer v. Cook, 118 Mo. 476; State ex rel. v. Bank, 120 Mo. 161.

(b) Appellants applied to this court for a writ of certiorari to the clerk of the St. Louis Circuit Court, directing said clerk to make the record show that the appeal from the justice of the peace was taken during the October term, and on that application a writ was ordered directing the clerk to show the circuit court was in session on the thirtieth day of November, when the justice's transcript was filed in his office, if that was the fact.

On our ordering the writ of certorari, the respondent admitted the fact directed to be shown by the clerk in the record; but contested the issuance of the writ on the ground that such amendment was improper; and appellants now say that on that showing it is apparent the October term was still in progress on the eighteenth day of October.

It is made the duty of an appellant from a judgment of a justice of the peace in a forcible entry or unlawful detainer action to cause to be filed in the *office of the clerk of the circuit court* to which the appeal is taken,

on or before the return day of the appeal, a certified transcript of the record and proceedings before the justice. R. S. 1899, sec. 3381. The filing entry is not an act of the court, nor does the statute require the clerk to note that the transcript is filed in term time or vacation, as the case may be, which fact, therefore, can only become a matter of record by being introduced in evidence on the trial, although the trial judge may take notice of it, as said.    But a clerk should not certify in a transcript matters judicially noticed, nor any matter which is neither properly of record *per se,* nor made of record by being put in proof and preserved in a bill of exceptions.    It was the duty of the appellants to have introduced proof that the October term was still running when they appealed from the justice's decision, if they wished to bring that fact up for our consideration, and then it could properly have been inserted in the bill of exceptions.    But to permit the clerk's amendment, or the admission of the respondent in lieu thereof, to overcome the presumption that the court below rightly took jurisdiction of the cause, would be to dispense with evidence to rebut a legal presumption.

It follows that we must proceed on the theory that the court below had jurisdiction.

2.    The judgment against appellant's surety on the appeal bond was unauthorized; for in this kind of proceeding, a summary judgment against such sureties is without statutory warrant, the remedy of the appellee being by an action on the bond, as in the case of an appeal to the Supreme Court (Keary v. Baker, 33 Mo. 603; Gann v. Sinclair, 52 Mo. 327; Powell v. Camp, 60 Mo. 569).    But the judgment may be treated as a nullity or reversed here as against the surety, without disturbing it as to the appellants.    Smith v. Railway, 53 Mo. 338; Neenan v. St. Joseph, 126 Mo. 89; St. Louis v. Lanigan, 97 Mo. 175.    In the case of Christopher & Simpson Architectural Iron & Foundry Co. v. Kelly et al., 91 Mo. App. (St. L.) 93, we examined the decisions touching the doctrine of the entirety of judgments and

its effect when a judgment is rightly entered against one party and wrongly against another, and held that as the law now stands, a reversal as to both is unnecessary except in cases where the obligations of said parties are so interwoven that to annul the judgment as to one involves its annulment as to the other for the sake of justice.

Besides, this point was not presented in the appellants' motion for a new trial, which is another good reason for disregarding it.    State ex rel. v. Farmers Bank, 144 Mo. 381.

3.    The stipulation in the lease that if the leasehold premises should be sold during the term, the lessees would vacate and deliver up possession on thirty days' notice in writing, shows on its face that it was intended to pass with the reversion; for the purpose of it was to give the lessor the privilege of conveying the property with its enjoyment undiminished by an outstanding term, so that a purchaser might enter into possession immediately to make such use of the premises as he desired. Appellants insist that this covenant was one which did not run with the reversion, but was personal to the original lessor and could only be availed of by him and not by grantees.

According to the accepted opinion, no covenants ran with the reversion at common law, because of feudal reasons connected with fealty, or the personal tie created from choice between a lord and vassal; which relationship the former could not transfer to another without the latter's consent.    When the importance of this social theory had waned in popular estimation as compared to that of the free exchange of property, legislation was desired to enable demised lands to be transferred so as to carry to grantees the full benefit and burden of contracts between owners and occupants; in other words, to authorize their conveyance subject to all rights and interests affecting their use.    To satisfy this need, the statute of 32 Hen. VIII, c. 34, was enacted; a statute broad enough in its terms to carry every stipulation in a lease to a grantee of the fee, but con-

strued for centuries to carry only those which by the common law ran with the land. Spencer's case, 5 Co. 18; Webb v. Russell, 3 Tr. 402; Dolph v. White, 12 N. Y. loc. cit. 302.

That statute is in force in this State, and, hence, whether the covenant in question passed to the present plaintiffs depends on whether it was real or personal.

Covenants are usually tested by the various resolutions in Spencer's case, and mostly by the first two, to determine their quality. Of these, the first relates to covenants which run with the land and declares that they are such as provide for acts to be done on the premises demised; though whether an assignment of either the reversion or the term transfers their benefits and obligations is therein said to depend on the circumstance whether they relate to a thing *in esse,* parcel of the demise at the time it was made (as to repair a house then on the premises) or to something to be made thereafter (as to build a wall) and that in the first instance they go by assignment whether assigns are named in the lease or not, but in the second instance only if assigns are named. But now the prevalent rule is that if an intention is shown by the instrument for them to pass, mention of assigns is not indispensable.

Personal covenants are said to be such as do not touch the interest demised, but are merely collateral to it; as a covenant to build a house on some other parcel of land not leased, or to pay a collateral sum to the lessor or a stranger; in which cases the covenants do not go to assigns even if they are named in the lease. 1 Taylor on Landlord and Tenant (8 Ed.), secs. 260, 263.

The language of the resolutions in Spencer's case might convey the impression that real covenants are only such as relate to some physical thing to be made or done on the premises; but the meaning is that they are such as affect the use and enjoyment of the premises by the tenant or the inheritance by the reversioner. Many cases have held that the covenant for quiet enjoyment, and similar provisions in deeds, which do not

contemplate any change in the physical condition of the premises, go with the land.     Norman v. Wells, 17 Wend. 136.

As was said in Bally v. Wells, 3 Wils. (S. C.) 25, in treating of collateral covenants:

"The reason why the assignees, though named are not bound, is because the thing covenanted to be done has not the least reference to the thing demised.   It is a substantive, independent agreement, not *quodam modo,* but *nullo modo,* annexed or appurtenant to the thing leased."

The sum of the recondite distinctions found in the books, may, perhaps, be safely stated to amount to this:   Covenants which affect the use, value and enjoyment of the premises, whether they relate to physical changes to be made thereon, or the use of the term or of the fee, go with both the reversion and the land; while stipulations in leases by which the parties to those instruments bind themselves to do acts which in no way affect the use or enjoyment of the premises, are merely personal obligations between themselves.

The covenant in question manifestly bore directly on the disposition of the premises by the owner of the fee, and, therefore, was one which ran with the land, unless the fact that assigns were not named in the lease as possible beneficiaries of the covenant restricted its benefits to the original lessor.   But the rule in regard to assigns being named, simply means that it must be apparent, in instances where the covenant sought to be enforced relates to something not *in esse,* that the intention of the parties to the lease was that a subsequent assignee should enjoy the covenant; and if that intention can be gathered, although assigns are not mentioned, it will be enforced as much as if they were.   In fact, that distinction as stated in Spencer's case, has been strongly criticised in England (Minshull v. Oakes, 2 H. & N. 793; 1 Smith's Lead. Cas. (9 Ed.), p. 186) and treated as of no importance in this country when the instruments construed show an intention for the covenant to run. 1 Smith's Lead. Cas. 208; Masury v. South-

worth, 9 Ohio St. 340; Bradford Oil Co. v. Blair, 116 Penn. St. 83; Bailey v. Richardson, 66 Col. 416; Dorsey v. Railway, 58 Ill. 65.

In construing a similar covenant in a lease by which either of the parties, or their executors or administrators, might terminate it by giving twelve months notice, Lord ELLENBOROUGH held that the notice could be given by an assignee of either party or by the heir or devisee, as well as by the parties themselves, their executors or administrators, saying:

"The object of such a proviso manifestly is, that the inheritance should not be bound on the one hand against the will of the person to whom the inheritance belongs; and that, on the other hand, the lessee and those claiming under him should not be bound against their will; but that in all circumstances the parties interested, whosoever they might be, should have the power to give the necessary notice for this purpose. The intention is not to give a collateral power to be exercised by a stranger, but 'to annex certain privileges to the term and to the reversion to pass with such term and such reversion respectively, and to be exercised by the persons, whoever they might be, to whom such term or reversion should come." Roe v. Hayley, 12 East. 464; see, also, Kennedy et al. v. Liddy et al., 15 W. R. 431; Attol v. Hennings, 2 Bulst. 282; Wright v. Burrowes, 4 Dowl. & L. 449.

In Roberts v. McPherson, 62 N. J. L. 165, a written lease reserved the right to the lessor to terminate the tenancy at the end of any month by giving notice to the tenant, and the reversion having been conveyed, the grantee thereof gave notice to terminate. His right to do so was challenged by the tenant; but it was ruled that the statute 32 Hen. VIII, c. 34, carried the benefit of the covenant to the grantee.

We are cited by appellants to the case of McClintock v. Lovelace, 5 Penn. B. R. 417, as holding a different doctrine; but the stipulation construed therein was different from the one before us and not so obviously intended for the benefit of whomsoever might acquire

the reversion; nor is the reasoning in that case as satisfactory as in the others we have noticed.

By the weight of authority, we think there is no doubt this particular covenant enured to the benefit of the first grantee and also of subsequent grantees; for in the seventh resolution of Spencer's case it was resolved that the assignee of the assignee should have an action of covenant.

4. The argument that the stipulation of the parties as to the damages done to the premises by appellants after they should have vacated, restricted the judgment that might be given for damages to one dollar, is unsound. That agreement also stated the monthly rental value of the premises and the court rightly gave judgment for twice the sum of the rental value to the date of judgment as damages in addition to whatever damage had been done to the property. R. S. 1899, sec. 3340.

The judgment is affirmed as to appellants. *Bland, P. J.,* and *Barclay, J.,* concur.