PACIFIC EXPRESS COMPANY, Appellant, v. LUKE M. EMERSON, Respondent.

St. Louis Court of Appeals, March 17, 1903.

1. **Negligence:** COUNTERCLAIM: COMMON CARRIER: INSTRUCTION. Where a jack is received by a common carrier and in the course of shipment contracts lung fever, it is proper in a counterclaim for damages for negligence in shipment to instruct the jury that the company was not liable on the counterclaim, unless the disease of which the jack died was caused by some negligence of the plaintiff, and that the burden was on the defendant to prove that negligence and that it caused the disease of which the animal died.

2. ————: ————: CONTRIBUTORY NEGLIGENCE. In an action to recover for the transportation of a jack, where damages for the death of the jack as a result of plaintiff's negligence were set up as a counterclaim, evidence showing that the jack was in good health when received by plaintiff; that plaintiff's route agent permitted the jack to remain down in the crate in which it was placed; that jacks, if allowed to remain down in a crate, become paralyzed in their legs, and will die if not soon relieved; and that the jack died the day of coming to its destination—was sufficient to show that plaintiff's negligence in permitting the jack to remain down directly contributed to its disease and death.

3. Judgment: SURETIES FOR COSTS. A judgment rendered against parties who are not parties to the suit, but mere sureties of the plaintiff for costs, is a nullity.

4. ————: PRACTICE, TRIAL. A judgment at law may be good as to one and bad as to another defendant or party named in the judgment.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED (*in part*).

### STATEMENT.

Plaintiff, a corporation and common carrier, for its cause of action, omitting formal allegations, stated the following:

"Plaintiff states further that on April 19, 1899, the defendant delivered to its agent at Bowling Green, Missouri, a certain jack to be transported by said plaintiff over certain railroad lines from Bowling Green, Missouri, to Wells, Texas, the same being consigned to J. L. Bailey, at the latter place. That at the time of such delivery the plaintiff, through its agent at Bowling Green, paid defendant $2.50 in cash for the crate in which said jack was to be transported and that the same was added to the charges for shipping and that the charges for shipping said jack from Bowling Green, Missouri, to Wells, Texas, was twenty-eight dollars, and that plaintiff expended in addition to the above items the sum of forty cents for hay to be fed said ani-

mal in transit and until he should be delivered to the consignee upon his arrival at Wells, Texas. The total amount thus due the plaintiff upon the arrival of said jack at Wells, Texas, being the three items above mentioned amounting to thirty dollars and ninety cents.

"Plaintiff further says that said animal arrived at Wells, Texas, on April 22, 1899, and was sick upon his arrival and died within a day or so thereafter and the consignee, J. L. Bailey, refused to accept said animal or to pay charges on same on account of his age, it being another and different animal from the one he had contracted to purchase and being twelve or thirteen years of age when the one he had contracted to purchase was seven years old only.

"That the defendant was immediately notified that the consignee, J. L. Bailey, at Wells, Texas, had refused to accept said jack for the reason claimed by him as stated above or to pay charges thereon. Plaintiff further states that the amount of its charges above, to-wit: $30.90 were necessary and reasonable charges and customary rates and that defendant owes and is indebted to plaintiff in said amount of $30.90 as set out above. That said charges were incurred and expenses paid at the special instance and request of defendant and that the defendant by his contract entered into at the time of the delivery of said animal to plaintiff for shipment, agreed with said plaintiff to pay said charges.

"Plaintiff further says that demand of payment of said sum of $30.90 was made on defendant on May 1, 1899, and that no part of same has been paid but that said amount still remains due.

"Wherefore plaintiff prays judgment against the defendant for said sum of $30.90, together with interest thereon from May 1, 1899, at the rate of six per cent per annum and for costs of suit."

Defendant for answer admitted the allegations of the petition and that he owed plaintiff the sum of $30.90, and for counterclaim stated the following:

"And defendant further answering says that at the time he contracted and delivered said jack to plaintiff, to be safely carried and delivered to said Bailey at Wells, Texas, said jack was in perfect health and condition and was safely and properly cared for and at said time had been bargained for by said Bailey and said Bailey had agreed to pay plaintiff the sum of eight hundred dollars for said jack, which amount was the fair and reasonable value of said jack. That the plaintiff did not safely carry or cause to be carried and delivered the said jack at Wells, Texas, pursuant to its agreement, but on the contrary the plaintiff so negligently conducted and so misbehaved in regard to the same in its calling as carrier that said jack was injured and contracted a disease while in plaintiff's keeping from the effects of which he died and was wholly lost to defendant, and defendant further states that thirty-six hours was the time usually occupied by the trains carrying plaintiff's express in going from Bowling Green, Missouri, to Wells, Texas, and was a reasonable time for the transportation of said jack to said Wells, Texas, from Bowling Green, Missouri. That the plaintiff failed to deliver the said jack at Wells, Texas, within thirty-six hours pursuant to its agreement but on the contrary so negligently and carelessly conducted and so misbehaved in respect to the same in its calling as a carrier, that plaintiff failed to deliver said jack at Wells, Texas, until five days time from the time said jack was delivered to plaintiff and thereby injuring and diseasing said jack and causing its death.

"That by reason of the facts aforesaid this defendant was injured by plaintiff to his damage in the sum of eight hundred dollars for which with costs he asks judgment."

The reply, omitting caption, was as follows:

"Now comes plaintiff and for reply to defendant's

amended answer denies each and every allegation of new matter in said amended answer contained.

"Further answering plaintiff says that at the time of receiving said jack for the purpose of forwarding him to Wells, Texas, the plaintiff and defendant entered into a written contract by which it was agreed that plaintiff should not be liable for any damage to said property caused by the detention of any train of cars upon which said animal should be placed for transportation, nor for the neglect or refusal of any railroad company to receive and forward same and by which contract it was further agreed that said animal should be forwarded to its destination entirely at defendant's risk.

"Plaintiff says that the said jack carried by it to Wells, Texas, was not the same jack which had been bargained for by J. L. Bailey, but was another and a different jack and was much older and of much less value than the one so bargained for by said Bailey, and that even if there was any unnecessary delay in transit resulting from the delays in the movements of trains, etc., upon which same was loaded plaintiff is not liable therefor, and that said animal was shipped at defendant's risk."

The agreement made between plaintiff and defendant for the shipment of the jack is as follows:

## "LIVE STOCK TAKEN ONLY AT OWNER'S RISK.

"The Pacific Express Company.   Live Stock Contract.

"Agreement made at Bowling Green, Missouri, the 19th day of April, 1899, between the Pacific Express Company and L. M. Emerson of Bowling Green, Missouri.   Whereas, the said L. M. Emerson has this day delivered to said company at Bowling Green, Missouri, the following animals: 1 jack (crd) of which he declares himself to be the owner, consigned to J. L. Bailey at Wells, Texas.   Now it is agreed that said com-

pany undertakes, as forwarders only, to forward said property to the nearest point of destination reached by said company. It being understood that said company relies upon the various railroad and steamboat lines of the country for its means of forwarding property delivered to it to be forwarded, it is agreed that it shall not be liable for any damage to said property caused by the detention of any train of cars or of any steamboat, upon which said property shall be placed for transportation, nor by the neglect or refusal of any railroad company or steamboat to receive and forward the same. If any sum of money besides the charges for transportation is to be collected from consignee on delivery of the said property and the same is not paid at once, said company may, at its option, retain said property with ordinary and reasonable care, at shipper's risk and expense, or may return same to shipper, he to pay charges for transportation and all expenses both ways. Said shipper is to load, tranship and unload said property at his own risk, said company furnishing the necessary laborers to assist.

"In consideration of said company to forward said property above mentioned, and of the reduced rate of compensation at which said property is to be so forwarded, said shipper agrees that said company, its agents, or any railroad or transportation company or carrier over whose lines the said property may pass, shall not under any circumstances, nor for any cause, be liable for any injury or damage to or loss of said property, whether or not the said injury, damage or loss happen or arise from any fault, negligence or carelessness, gross or otherwise, on the part of said company, its agents or servants. It being the intent of this contract that said property shall be forwarded entirely at the owner's risk.

(Signed)

"LUKE M. EMERSON, Shipper.    H. S. WILLIS, Agent."

The evidence is that the animal was shipped over the usual routes for shipping live stock by express from Bowling Green, Missouri, to Wells, Texas; that the jack was shipped over the St. Louis & Hannibal road from Bowling Green to Gilmore, and from the latter point to St. Louis over the Wabash road; from St. Louis to Texarkana, Texas, over the Iron Mountain, thence over the St. Louis & Southwestern to Pilot, Texas, thence over the Lufkin branch to Wells.

The animal left Bowling Green at 7:15 a. m. on the twentieth of April. There was a delay from 8 a. m. until 3 p. m. at St. Louis for the reason there was no direct connection between the trains on the Wabash and Iron Mountain roads. There was no direct connection between the Iron Mountain and St. Louis & Southwestern at Texarkana and there was a delay at that point of about nine hours. There was another delay at Tyler, Texas, of eleven hours for the same reason. These delays were all occasioned on account of the schedule time of the passenger trains on the several roads and were not occasioned on account of any train on any of the roads, on which the animal was transported, being behind schedule time.

According to the evidence the animal was on the road about sixty hours, the usual time between Bowling Green, Missouri, and Wells, Texas. The distance between these two points is about eight hundred miles. When the animal arrived at Tyler, Texas, he appeared in good condition, but seemed sleepy and stupid. Somewhere between Tyler and Wells he got down in the crate and continued down until Wells was reached. On his arrival at Wells he was covered with perspiration and unable to get up or to stand when helped up. After he was unloaded it was found that he could not open his mouth. His mouth was pried open and he was given some water, which he drank but he could not eat. His limbs were rubbed and he was finally able to stand for a few minutes, but got down and was not able there-

after to stand and died within twenty-four hours after his arrival.

The testimony tended to show that he had lung fever.

The defendant testified that he had been an importer of jacks for twelve or fourteen years and sold and shipped thousands of them to all parts of the country; that when they got down on board a vessel or car and remained down for some time their legs would become paralyzed and if not helped up they would die; that he had bargained the jack in question to J. L. Bailey of Wells, Texas, for $800 and that he was worth that amount. Other witnesses, who had known the jack for some time, testified that he was worth from seven to eight hundred dollars.

Bailey refused to receive the jack, for the reason that he was sick when he arrived, and testified that he was three years older than represented by the defendant.

The plaintiff did not own any of the roads over which the jack was shipped, nor control the movements of any of the trains thereon, but depended upon them to carry its freight for a certain per cent of the freight charges.

In his deposition the agent at Wells testified that the jack arrived on April 23d, but he was evidently mistaken as to the date of the arrival of the jack as it is shown by his telegram and letter to the superintendent of the plaintiff, sent the day after the jack died, that he must have arrived on the twenty-second.

It is shown by the testimony of the agent at Bowling Green, Missouri, and also by that of the defendant that when defendant brought the jack in on the nineteenth to have him shipped he was informed by the agent that he could not be shipped out until the next day and defendant then asked permission of the agent for the jack to remain in the warehouse crated; that

this permission was given and that defendant had the jack fed and cared for over night.

The court refused peremptory instructions that the verdict should be for plaintiff and gave the following:

"2. The court instructs the jury that although you may find and believe from the evidence in the cause that the defendant's jack was in good health and condition when delivered to plaintiff at Bowling Green and was in bad health and condition when it arrived at Wells, Texas, still these facts alone do not authorize you to find for defendant for damages on his counterclaim.

"3. The court instructs the jury that if you find from the evidence in the cause that the jack in controversy died shortly after its arrival at Wells, Texas, from the effects of pneumonia or a lung disease, then before defendant can recover damages for its death it devolves upon him to show that such disease was caused by the carelessness or negligence of plaintiff's agents in the handling or carriage of said jack during transit, or while in plaintiff's keeping as a common carrier.

"$3\frac{1}{2}$. The court instructs the jury that the plaintiff, as a common carrier, is not liable for damages to the jack in controversy which resulted from disease, unless it be shown to your reasonable satisfaction that such disease, if you find that such jack had one, resulted from some negligence or mismanagement of said jack on the part of plaintiff's agents during transit, or while in plaintiff's keeping as a common carrier.

"5. The court instructs the jury that if you believe from the evidence in the cause that the defendant's jack died shortly after its arrival at Wells, Texas, from the effects of pneumonia or lung trouble and that said disease was contracted solely by reason of the changes in the climate through which the jack was taken in being shipped from Bowling Green, Missouri, to Wells, Texas, and as a result of such climatic changes, if any, solely the disease developed to such an extent as to cause the

subsequent death of the jack, then you must find against defendant on his counterclaim.

"6.   The court instructs the jury that if defendant assented and agreed with Agent Willis that the jack should remain over night in the wareroom at the station at Bowling Green on April 19, 1899, and that he should be taken out on the morning train the next day going south, then plaintiff is not liable for damages, if any, resulting to such jack from the delay while said jack was kept over night in such wareroom.

"7.   The court instructs the jury that even if there were delays in the movements of the trains upon which said jack was carried, and even if there were delays at transfer points, viz., St. Louis, Texarkana and Tyler, still you can in no event find against plaintiff on account of such delays unless you further find that such delays caused or aggravated the illness of said jack, and unless such delays were caused and brought about by plaintiff, its agents or servants."

The court refused the following:

"9.   The court instructs the jury that even though you may find and believe from the evidence in the cause, that the jack transported by plaintiff for defendant to Wells, Texas, was down in the crate when he arrived at Wells, Texas, and even though you find further that said jack had been down in said crate for some time previous to his arrival at the latter place, still you are not authorized to find in favor of defendant on his counterclaim for damages for the death of said jack by reason of such facts, provided that you further find that said jack died from pneumonia or lung trouble, and that his being down in the crate did not produce said disease or aggravate it so as to cause his death."

The court gave No. 4 in a modified form which, as modified, reads as follows:

"4.   The court instructs the jury that if you find from the evidence in the cause that defendant signed the contract read in evidence, then plaintiff is not liable

for any damages to said jack resulting from the delays, if any, of any train upon which said jack was carried, not caused, brought about or produced by plaintiff, even if you find that there were such delays.''

For the defendant the court gave the following instructions:

''1.   The court instructs the jury that if they shall believe from the greater weight of the evidence in the cause, that the jack shipped by the defendant to Wells, Texas, was in good and sound condition at the time he was shipped, and that the jack was received by the plaintiff in that condition, and that. while the jack was in the plaintiff's possession he was injured by the negligence, if any, of plaintiff, its agents and servants, either in the handling or care of said jack or by any unreasonable delay, if any, on the part of plaintiff, its agents and servants during its transit, in delivering said jack, and that by virtue of and as a direct result of such negligence, if any, in the handling, care or delivering of said jack, and injuries, if any, said jack became diseased and died without fault on the part of the, defendant, then the verdict of the jury must be for the defendant under his counterclaim for such amount as the jury may believe from the evidence said jack was reasonably worth, not to exceed the sum of eight hundred dollars.

''2.   The court instructs the jury that if they shall find from the evidence in the cause that the death of the jack in controversy resulted from the negligence, if any, of the plaintiff either in the handling and caring for said jack during its transit from Bowling Green, Missouri, to Wells, Texas, or by an unreasonable delay, if any, on the part of the plaintiff in its transit, then the fact that the defendant signed the receipt or contract read in evidence, will constitute no defense to the defendant's counterclaim.

''3.   The court instructs the jury that it was the duty of the plaintiff, The Pacific Express Company, to

transport the jack in controversy from Bowling Green, Missouri, to Wells, Texas, within a reasonable time after it accepted said jack for shipment, and it was also its duty to exercise reasonable care and caution in the transportation of said animal to protect it from injury or damage and from contracting disease while in the plaintiff's care or its agents or servants, and if the jury chall believe from the evidence that said jack in its transit, and while in the care of the plaintiff, its agents and servants and without any fault on the part of the defendant, became injured or damaged and as a result thereof contracted a disease from which it died, and was wholly lost to the defendant and that said injury, damage and death was caused by the negligence, if any, of the plaintiff, its agents and servants in handling and caring for said jack, or by unreasonable delay, if any, on the part of plaintiff, its agent or servants in its transportation, then the jury will return a verdict for the defendant on his counterclaim for such amount as they shall believe from the evidence that said jack was reasonably worth not exceeding the sum of eight hundred dollars.

"4. The court instructs the jury that if they shall believe and find from the evidence that the jack in controversy when delivered to plaintiff for shipment was in sound and healthy condition and properly prepared for shipment, and when the jack arrived at Wells, Texas, he was in a diseased and dying condition, then the jury may take that fact, if it is a fact, into consideration in connection with all the other facts and circumstances in evidence, in determining whether plaintiff, its agents and servants were negligent and careless in the transportation of the jack from Bowling Green to Wells, Texas."

The jury found for defendant and assessed his damages at $800 and judgment was entered on the verdict for defendant and against plaintiff and J. D. Hostetter and J. B. Jones, its sureties, for costs.

Plaintiff filed timely motions for new trial and in arrest which were overruled by the court. Plaintiff appealed to this court.

*Hostetter & Jones* for appellant.

(1) It is elementary law that even if plaintiff was negligent, in some respects, in handling the jack, unless the supposed negligence produced the alleged injury or aggravated it, if produced by other causes, then there can be no recovery. Stanley v. Railroad, 114 Mo. 606; Stoneman v. Railroad, 58 Mo. 503. (2) Defendant is also limited to the specific acts of negligence charged, and neither charge, if true, could have caused the sickness of the animal. Atchison v. Railroad, 80 Mo. 213.

*J. H. Blair & Son* and *J. E. Thompson* for respondent.

(1) Under the statute, plaintiff would be liable for any loss, damage or injury sustained by the defendant by reason of its own negligence, or the negligence of any other common carrier, railroad, transportation company to which the jack should be delivered or over whose lines it would have to pass. Sec. 5222, R. S. 1899. (2) The plaintiff could not contract against injuries caused by its own negligence. Ins. Co. v. Railroad, 74 Mo. App. 89; Vaughn v. Railroad, 78 Mo. App. 639. It could not by contract exempt itself from liability for the negligence of the railroads and transportations companies to whom the jack should be delivered or over whose lines it would have to pass, because it contracted for through shipment from Bowling Green, Missouri, to Wells, Texas. Redmon v. Railroad, 90 Mo. App. 68; McCann v. Eddy, 133 Mo. 59.

BLAND, P. J.—1. The principal contention of appellant is that the court erred in refusing to give instruction No. 9.

The counterclaim of defendant alleges two grounds of negligence as causing the injury complained of: first, that plaintiff "so negligently conducted and so misbehaved in regard to the same in its calling as carrier that said jack was injured and contracted a disease while in plaintiff's keeping from the effects of which it died," etc.; second, that thirty-six hours was a reasonable time for transporting the jack from Bowling Green to Wells, and that "plaintiff failed to deliver the said jack at Wells, Texas, within thirty-six hours pursuant to its agreement, but on the contrary so negligently and carelessly conducted and so misbehaved in respect to the same in its calling as a carrier, that plaintiff failed to deliver said jack at Wells, Texas, until five days from the time said jack was delivered to plaintiff and thereby injuring and diseasing said jack and causing its death."

The negligence relied on is, first, that the plaintiff was negligent in caring for the jack while in transit whereby it became diseased, etc., and the second, that the transportation of the jack was unreasonably delayed by reason of which he became diseased, etc. We may dismiss the second allegation of negligence with the remark that there is no substantial evidence in support of it.

Instruction No. 9, asked by the plaintiff and refused by the court, specifically directed the attention of the jury to the only negligence which the evidence tends to prove and correctly declared the law to be that if this negligence did not cause or contribute to produce the disease of which the jack died the verdict should be for the plaintiffs, and it was error to refuse it, unless it is covered by other instructions given. It seems to us that instructions Nos. 3 and $3\frac{1}{2}$ given, covered all that was included in No. 9 refused. In the two given the jury was told in plain and direct terms that plaintiff was not liable on the counterclaim, unless the disease of which the jack died was caused by some negligence of the plaintiff, and that the burden was on defendant to

prove that negligence and that it caused the disease of which the jack died.

We think the evidence tends to show that the plaintiff was negligent in permitting the jack to remain down in the crate while in transit. It is true that the route agent of plaintiff testified he had no sufficient force at his command to raise the jack up, but this is no excuse for the negligence. If no sufficient force was at hand it should have been procured. The duty of plaintiff was to safely transport the animal and when it got down in the crate it was not in a safe condition, and the duty of the plaintiff was to remedy this situation by putting the jack on its feet.

The evidence is that the jack was sound and in good health when received by the plaintiff for shipment and that such animals, if allowed to remain down in a car or vessel, become paralyzed in their legs and will die if not speedily relieved by getting them on their feet. This evidence strongly tends to show that the negligence of the plaintiff in permitting the jack to remain down caused, or directly contributed to its disease and death.

We think the evidence is abundant to support the verdict and that the instructions, taken as a whole, correctly declared the law of the case.

2. It was error to render judgment against Hostetter and Jones, who were not parties to the suit but mere sureties of the plaintiff, for the costs. The judgment, as to them, is an absolute nullity. But this does not affect the judgment against the plaintiff as it is not injured thereby and is in no condition to complain thereof. A judgment at law may be good as to one and bad as to another defendant or party named in the judgment. State ex rel. v. Tate, 109 Mo. 265; Neenan v. City of St. Joseph, 126 Mo. 89.

The judgment, as to Hostetter and Jones, being void, it is as to them hereby vacated, but as to plaintiff

it is in all things affirmed. *Reyburn* and *Goode, JJ.,* concur.