**BUDER et al. v. FISKE et al.**

No. 13595.

United States Court of Appeals
Eighth Circuit.

April 19, 1949.

Harry C. Blanton, of Sikeston, Mo. (G. A. Buder, Jr., of St. Louis, Mo. on the brief), for appellants.

Jesse T. Friday, of St. Louis, Mo. (E. J. Doerner, of Tulsa, Okl., on the brief), for appellees Johanna F. Fiske, Amanda F. Wheeler, Otto B. Franz, Henrietta A. Holdoway, Adelaide M. Zimmerman, and Ehrhardt W. Franz.

Samuel H. Liberman, of St. Louis, Mo., for appellees Mississippi Valley Trust Co., administrator C.T.A. of estates of Ernst H. Franz and Walter G. Franz.

Before SANBORN, JOHNSEN, and STONE, Circuit Judges.

STONE, Circuit Judge.

This is an appeal by G. A. Buder (surviving trustee) and Arthur U. Simmons, administrator, C.T.A. of the estate of Gustav A. Franz (deceased co-trustee) from a judgment surcharging the trustees for several items in the total sum of $421,425.73. This judgment was predicated upon exceptions filed to an accounting of the administration of the trust prepared by Ernst & Ernst, accountants appointed by the Court.

This appeal is the latest appearance in this Court of the long litigation concerning the estate of Ehrhardt D. Franz.[1] To understand what the present appeal is about, it is advisable to set forth some matters from this prolonged series of contests in the courts.

Ehrhardt D. Franz died in February, 1898, testate, leaving a widow (Sophie) and ten children (Gustav A. Franz, Minna Franz Kleinschmidt, Walter G. Franz, Ernst H. Franz, Amanda Franz Wheeler, Henrietta Franz Holdoway, Johanna Franz Fiske, Adelaide Franz Zimmerman, Ehrhardt W. Franz, and Otto B. Franz). His will devised the residue of his property to Sophie for life and thereafter to the ten children, their heirs and assigns in equal shares.

A daughter, Minna Franz Kleinschmidt, died several years later leaving as heirs her husband Sherman H. Kleinschmidt and two daughters, Helen and Eleanor (a minor). Thereafter, January 30, 1909, this trust was created by Sophie. The trustees were G. A. Buder and Gustav A. Franz. The trust estate consisted of all of Sophie's right, title and interest, whether owned as her absolute property or as life tenant under the above will, to certain described bonds and stocks and to "any and all other assets, securities," etc. "received, acquired, held or owned" by her under the above will. The trustees were given broad powers in handling the estate. From the income, the trustees were to pay Sophie $1000 quarterly and, thereafter, pay each of the children $625.00 quarterly—the pay-

ment to Sherman H. Kleinschmidt to be made "in behalf and for account of Helen and Eleanor Kleinschmidt." On the death of Sophie, the trustees were to hold the trust estate "for account of the estate of said Sophie Franz, to be administered by the Probate Court of the City of St. Louis, Missouri, in accordance with the last will and testament of said Sophie Franz * * *." The trustees were required to employ the firm of Buder & Buder as counsel and attorneys. The trustees were empowered to pay from the trust funds all "attorneys' fees, outlays, compensation, charges and costs of administration." Semi-annual statements from the trustees to Sophie were required.

Thereafter, Ehrhardt W. Franz (a son of Ehrhardt D. Franz) brought a suit in the state court against the other beneficiaries (under the will of Ehrhardt D. Franz) and G. A. Buder. By a decree (June 16, 1910), that Court determined that Sophie had conveyed to the trust merely a life estate in the property coming from her husband and the absolute estate in such property as she owned outright; that the beneficiaries had ratified the trust; and that the trustees should continue administration of the trust property in accordance with the trust instrument. See Franz v. Buder, 8 Cir., 11 F.2d 854, 855.

March 5, 1924, Ehrhardt W. Franz brought against G. A. Buder a suit, in which, the present controversy is the most recent eruption. In that action, Ehrhardt alleged that these trustees had exclusive possession, management and control of the property in which he and the other children of his father held an estate in remainder; that he had demanded of the trustees information concerning, and an account of, the nature, condition, extent, and value of the property; that the trustees had refused; and that they asserted that he no longer had any remainder interest in such property. Three results of this litigation were (1) to bring in both trustees, Sophie, and all of the children (or their heirs) of Ehrhardt D. Franz; (2) to es-

---

[1] For earlier appearances in this Court of litigations having to do with this trust, see Fiske v. Buder, 8 Cir., 125 F.2d 841, cases listed in the footnote page 843 of that case, and In re Franz' Estate, 346 Mo. 1149, 145 S.W.2d 400.

tablish the rights of the remaindermen; and (3) to retain, in the District Court, control of the administration of the trust.

The Mississippi Valley Trust Company, as administrator of the estates of two of the children (Ernst H. Franz and Walter G. Franz), and Earl F. Nelson, as guardian ad litem of Eleanor (the minor child of Minna Franz Kleinschmidt) intervened praying much the same relief as the plaintiff. The plaintiff and the interveners represented three and one-third of the interests of the ten children (remaindermen) of Ehrhardt D. Franz. The other six living children and two of the three heirs of Mrs. Kleinschmidt (Sherman H. Kleinschmidt and Helen Kleinschmidt) made up the remaining six and two-thirds of such interests. The six and two-thirds interests, Sophie, and the trustees opposed the action. Buder & Buder represented the trustees, Sophie and the six and two-thirds interests in this litigation up to 1935—when five of the six and two-thirds interests employed other counsel.

Sophie died April 14, 1930, leaving a will bequeathing her estate, in equal parts, to nine of her children or their representatives—the child excluded being Walter G. Franz who had theretofore died without children.

In May, 1930, the six and two-thirds interests filed petitions for distribution of the trust estate. June 1, 1930, the Court ordered a "final" accounting by the trustees. On June 22, 1931, such report was filed, prepared by Cornell & Company. No exceptions were filed by any of the six and two-thirds interests. Exceptions were filed by Ehrhardt W. Franz, the Mississippi Valley Trust Company (in behalf of the estates of Ernst H. Franz and of Walter G. Franz, both deceased), and by Nelson as guardian ad litem for the minor, Eleanor. The Court ruled these exceptions in an order, April 1, 1932, which adjudged distribution of one-tenth of the "net estate" of the "property and assets comprising the corpus of the estate of E. D. Franz in the possession" of the trustees to Ehrhardt W. Franz (less an item not pertinent here), one-tenth to the Trust Company as administrator of Walter G. Franz, one-tenth to the Trust Company as administrator of Ernst

H. Franz, one-thirtieth to Eleanor Kleinschmidt Berger, and the remaining six and two-thirds to Gustavus A. Buder, Sr. as executor of the estate of Sophie Franz.

Distribution was made to Ehrhardt W. Franz and the Trust Company under the order. The six and two-thirds interests appealed from that part of the judgment requiring their interests to be turned over to the executor of the estate of Sophie instead of being turned over to each of them directly. This appeal was dismissed to await the outcome of litigation in Missouri courts as to liability of these interests to state inheritance taxes as part of the estate of Sophie. Fiske et al. v. State of Missouri, 8 Cir., 69 F.2d 683. The Supreme Court of Missouri determined that the six and two-thirds interests in the remainder of the Ehrhardt D. Franz estate were not parts of the estate of Sophie, deceased, and therefore not subject to state inheritance taxes. In re Franz' Estate, 344 Mo. 510, 127 S.W. 2d 401. Rehearing was denied by that Court on April 20, 1939. In this State action, only one and two-thirds (G. A. Franz, Sherman H. and Helen Kleinschmidt) of the six and two-thirds interests had been represented by Buder & Buder—employment of Buder & Buder by the other five interests having been terminated in 1935 or 1936.

May 12, 1939, these five interests filed a motion attacking the allowance of five per centum to the trustees as commissions against the six and two-thirds entire remainder interests as contained in paragraph "5" of the foregoing order of distribution of April 1, 1932. After full hearing, the motion was denied December 17, 1940. An appeal resulted in reversal "with directions to enter an order sustaining appellants' motion." Fiske et al. v. Buder et al., 8 Cir., 125 F.2d 841, 849.

About two months after such determination by this Court, the trial court, "of its own motion," entered an order directing the surviving trustee to employ Ernst & Ernst, as accountants, to prepare and file an audit and final accounting of the estate of Ehrhardt D. Franz "from June 22, 1931, to the date of filing the same." The report of these accountants was filed August 25, 1942. To this report, exceptions were filed

by the five interests and by Ehrhardt W. Franz. July 23, 1946, the Court ruled upon the exceptions after full hearing. Findings of fact and conclusions of law were filed and an order entered upon that date, D.C., 82 F.Supp. 388. June 5, 1947, nunc pro tunc modifications affecting the figures of several items, were made in the findings, conclusions and order. Some of the exceptions were denied. Four exceptions were sustained and the trustees surcharged for the amounts determined in connection therewith. Also, the surcharged amounts were made subject to participation by the ten remaindermen. August 2, 1946, joint motion for new trial was filed by G. A. Buder (surviving trustee) and Arthur U. Simmons, administrator, C.T.A. of G. A. Franz (deceased trustee) and denied on March 17, 1947. Later, the same parties filed a joint motion for leave to file a motion for new trial based upon newly discovered evidence, which was denied on April 18, 1947.

G. A. Buder (surviving trustee) and Arthur U. Simmons, administrator C.T.A. of Gustav A. Franz (deceased trustee), bring this appeal from the above order, from denial of their joint motion for new trial, and from denial of the motion for leave to file motion for new trial based on newly discovered evidence. The matters urged in this appeal have to do with each of four items of surcharge, with the right to participate given the three and one-third interests, and with the rejection of offered testimony upon submission of the joint motion for new trial. The denial of leave to file motion for new trial based on newly discovered evidence is not presented but abandoned here.

The logical order for examination of these contentions is (I) the motion for new trial, (II) the items of surcharge, and (III) the participation of the three and one-third interests. If the Court erred in connection with the motion for new trial, we do not reach the other contentions. Unless all or some of the surcharged items are sustained, the right of participation of the three and one-third interests vanishes.

## I. The Motion for New Trial.

The granting or the denial of a new trial is not an appealable order. Such determination may be challenged—on the ground of abuse of discretion—in an appeal from the final judgment Marshall's U. S. Auto Supply, Inc., v. Cashman, 10 Cir., 111 F.2d 140, 141. The error urged here has to do with a claimed abuse of judicial discretion. The issue presented here is the rejection of testimony offered by appellants in connection with their joint motion for new trial filed August 2, 1946 and denied March 17, 1947.

When this motion was presented, the appellants proposed to offer evidence in connection therewith. It was expressly stated by appellants that this offer was not under "the rule as to newly discovered evidence" but was "additional evidence" tendered under "the discretionary power of the Court on such motion, to do all that is calculated to aid and accomplish the fundamental purpose of the new rules, namely to attain speedy and exact justice." Appellants base this motion upon that portion of Rule 59(a), Federal Rules of Civil Procedure, 28 U.S.C. A., reading: "On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."

Without examining the attacks by appellees upon the form and substance of the motion,[2] we prefer, strictly for the purposes of this case, to assume that the motion is sufficient. We do this because we believe that there was no abuse of discretion in refusing to hear the proffered evidence. Except a letter to Judge Moore and an extract from a trial brief of some of these exceptors, all of this evidence had been in possession of or known to appellants long before the hearing upon the exceptions to the report. A lack of diligence in not offering it at that hearing seems quite clear. While we do not express any opinion as to

[2] Neither the Court nor counsel have been able to find but two cases bearing upon this portion of Rule 59(a). They are Elliott v. United Employers Casualty Co., D.C.S.D.Texas, 35 F.Supp. 781 and Bronstein v. Pennsylvania R. R., D.C.E. D.Pa., 33 F.Supp. 716, 719.

whether lack of diligence is, in all situations, a bar to reopening a case under Rule 59(a), we do not doubt that it may well be a sufficient reason for a trial judge, in the exercise of judicial discretion, to refuse such evidence offered after judgment. In the situation here, we cannot hold that there was a clear abuse of judicial discretion in denying the offer of this evidence for the purposes for which it was offered.

## II. The Surcharged Items

There are four of these items: (a) Six hundred rights to subscribe for stock in the Burroughs Adding Machine Company (value $45,000) retained by the trustees as 5% commissions for distribution by them of 12,000 such rights, (b) "advancements" to the remaindermen prior to the death of Sophie (principal sum $100,795.46 and interest thereon of $98,410.32), (c) attorney fees of $115,000, and (d) interest ($7,957.-27) on funds of the corpus of the trust estate commingled with those of Buder & Buder.

### (a) The Stock Rights

The estate of Ehrhardt D. Franz consisted of real and personal property inventoried as of a total value of $95,624.54. Included therein were 210 shares of stock in the American Arithmometer Company, valued at $21,000. Thereafter, that Company declared stock dividends of a like amount. This augmented stock was included in the residue of this estate turned over to Sophie on the close of the administration of the Ehrhardt D. Franz estate in 1900. In 1905, the Burroughs Adding Machine Company exchanged 4200 of its shares for these 420 shares in the Arithmometer Company. January 30, 1909, Sophie created the present trust estate, expressly including therein these shares of Burroughs stock.

By 1920, this Burroughs stock held in the trust had, through stock dividends, increased to 12,600 shares, standing in the name of Sophie Franz. For the purpose of increasing its capital, Burroughs declared "rights" to subscribe for new stock to the then stockholders. These rights were on the basis of one half share to each share of stock then held. Each new share was for $100 value and subscriptions were to be at par. Each right to subscribe (for one half share) had, at that time, a value of seventy-five dollars.

In January, 1920, Sophie and nine of the ten remainder interests[3] entered into a contract for distribution of these subscription rights by the trustees to these nine remaindermen. This contract provided that, "the said Trustees shall receive and may retain five per cent of all such rights received from said Burroughs Adding Machine Company on account of any distribution made to the parties hereto as their compensation and commissions, the same as if final distribution or transfer of such part thereof had been made to the executor or legal representative of said Sophie Franz, in accordance with the terms of said trust conveyance or any other distribution which may be effected by agreement under said trust agreement or the supplemental agreement above referred to."

Under this contract provision, the trustees took 600 of these subscription rights of the then value of $45,000. The Court sustained the exceptions to this item and surcharged the trustees therefor. The basis of this action by the Court was that the trustees were not entitled to a commission; that G. A. Buder (one of the trustees and a member of the law firm of Buder & Buder, then counsel for Sophie, for the trustees, and for these five remaindermen) had represented to these remaindermen that the trustees were entitled to a commission; that these remaindermen had executed the contract relying upon such statement.

Appellants do not and cannot contend that they were, because of their position as trustees, entitled to a commission upon these "rights." Fiske v. Buder, 8 Cir.,

---

[3] The tenth remainder interest (Mrs. Adelaide Franz Zimmerman) was omitted "by reason of her marriage to Robert Zimmerman, a resident of Germany" and an "alien enemy." Apparently, Mrs. Zimmerman signed this contract later (Rec. p. 428) but her signature does not appear on the contract set forth in the printed record at page 300. Also, it seems that she (at some time prior to December, 1926) received her remainder portion of these stock rights (Rec. pp. 303, 310).

125 F.2d 841, 847; Buder v. Franz, 8 Cir., 27 F.2d 101, 113 and see Missouri Central Building and Loan Ass'n v. Eveler, 237 Mo. 679, 141 S.W. 877, 879, Ann.Cas.1913A, 486. They rely upon this contract as establishing their right and upon other defenses (res judicata, splitting cause of action, laches, and waiver) as barring present challenge.

As to the contract, appellants contend: That Buder & Buder did not represent these exceptors at the time this contract was made; that the life tenant and her trustees were then at liberty to deal with the remaindermen at arm's length; that the remaindermen could and did enter into a valid contract; that the contract was valid even though made under an erroneous view of the law; and that the law as to the status of such "rights" was then uncertain.

The testimony of Mr. Oscar Buder (a member of Buder & Buder) is clear that Buder & Buder considered themselves to be and acted as counsel for the remaindermen in matters concerning the trust estate and not requiring litigation. This relation was "from the very beginning of the trust agreement" in 1909 and continued after 1920 when this contract was executed. They regarded such services as covering "advice of all sorts to all the beneficiaries in the estate" and as coming within the annual retainer paid them under their employment in accordance with the provisions of the trust agreement. Also, the testimony supports the view that the remaindermen sought and received legal advice from them in matters affecting these estates.

In addition to this relationship, Mr. G. A. Buder was one of the trustees.

In this situation as to commissions on distribution of these stock rights, the interests of the trustees and of the remaindermen were clearly opposed. Also, Buder & Buder could not act as counsel for both the trustees and the remaindermen without fully informing the remaindermen, at least, of this status of opposition. Fiske v. Buder, 8 Cir., 125 F.2d 841; Baker v. Humphrey, 101 U.S. 494, 499-502, 25 L.Ed. 1065; and compare Sluggett v. Phillips, Mo.App., 178 S.W.2d 458, 462; Moffett Bros. Partnership Estate v. Moffett, 345 Mo. 741, 137 S.W.2d 507, 511, and Hoffman v. Hogan, 345 Mo. 903, 137 S.W.2d 441, 446. It is not material here whether the life tenant and her trustees *might* have dealt at arm's length with the remaindermen nor that the remaindermen *might* have entered into a contract such as this. Nor is it material that the contract was entered into under an erroneous view of the law. Nor that the legal status of the "rights" was then uncertain. The crux is that Buder & Buder, as attorneys for all of these parties, did not inform the remaindermen of this opposition of interests and that there was this uncertainty in their rights so that they might have had opportunity to take a position to protect themselves. We need not impugn the motives of Buder & Buder in misleading all parties to believe a commission was legally due the trustees. It is enough to vitiate the contract that Buder & Buder, while acting as counsel for all, did not inform the remaindermen of this opposition of interests.

Another aspect of this situation is that this action of the trustees in insisting upon this compensation was detrimental to the remaindermen. Whether the trustees, as to these remaindermen, were trustees or quasi-trustees (as standing in the place of the life tenant, being trustees of an estate created by her) their duty was to turn over this corpus unimpaired by any act of theirs Fiske v. Buder, 8 Cir., 125 F.2d 841, 847; Buder v. Franz, 8 Cir., 27 F.2d 101, 114; Warfield v. Bixby, 8 Cir., 51 F.2d 210, 213, 214; Collins v. Hartford Accident & Indemnity Co., 178 Va. 501, 17 S.E.2d 413, 137 A.L.R. 1054. This contract does not defeat the surcharge.

The contentions of appellants as to res judicata and laches have been directly ruled against them by this Court in Fiske v. Buder, 125 F.2d 841, and (as to laches) see Bickel v. Argyle Inv. Co. 343 Mo. 456, 121 S.W.2d 803, 807.

The waiver urged here is one implied from alleged knowledge and delayed action. A necessary element of waiver is the intentional relinquishment of a known right. Masden v. Travelers' Ins. Co., 8 Cir., 52 F.2d 75, 76, 79 A.L.R. 469; Liggett & Myers Tobacco Co. v. DeParcq, 8

268

Cir., 66 F.2d 678, 686. While waiver may be implied by acts or a course of conduct from which an intention to waive may reasonably be inferred (56 Am.Jur. p. 117, § 17 and citations in footnote 8), yet such intention is a question of fact, Masden v. Travelers' Ins. Co., supra, 52 F.2d page 76 with the burden of proof upon the party alleging waiver, Masden case, 52 F.2d page 76, and doubtful situations will not support waiver, 56 Am.Jur. p. 118, § 17. Here, the basis of the claim of waiver is knowledge and delayed action. Under the evidence here, the ruling on laches, Fiske v. Buder, supra, even more strongly applies to implied waiver where intention to waive depends upon practically the same evidence as urged for laches.

The contention as to splitting of causes of action is based on the situation that the five of the 6⅔ remainder interests sought to vacate the settlement order of 1932 only in so far as a 5% commission was allowed upon the entire remaindermen interests—another item in the settlement than this stock rights transaction which had occurred years before. This effort to vacate resulted in litigation reaching this Court. Fiske v. Buder, 8 Cir., 125 F.2d 841.

█ Few problems of practice have produced the multiplicity of cases as have that of splitting of actions. The doctrine is in the nature of a rule of repose with the double purposes of protecting both the courts and the litigants from the harassment of repetitious litigation. Examination of any good legal digest will reveal the various difficulties which have arisen in applying the rule. See 1 Am.Jur. pp. 480-502. Some guides have been recognized. One of these is that the rule does not apply where the two causes of action are separate, even though they might have been joined in a single action. Woodbury v. Porter, 8 Cir., 158 F.2d 194, 195; Chamberlain v. Missouri-Arkansas Coach Lines, 354 Mo. 461, 189 S.W.2d 538, 539, 161 A.L.R. 204. Also, "One of the tests for determining whether the cause of action asserted in a suit is the same as that prosecuted in a prior suit is whether or not proof of the same facts will support both actions." Woodbury v. Porter, supra, 158 F.2d at page 195.

█ It is true that the earlier proceeding and this proceeding each requires setting aside certain—though different—provisions of the order of 1932. However, the proof under each proceeding divides at that place and from there on is entirely different and has to do with items distinctly different in every essential.

Accumulative consideration is here present in that this matter is concerned with the administration of a trust estate and, in proper cases, settlements of trustees' accounts may be reopened and restated. Fiske v. Buder, 8 Cir., 125 F.2d 841; 54 Am.Jur. p. 406, § 511; Seawell v. Greenway, 22 Tex. 691, 75 Am.Dec. 794. This is such a "proper case." Fiske v. Buder, 8 Cir., 125 F.2d 841. Also, it has been held that the rule against splitting actions will be liberally applied to accomplish justice. United States v. Pan-American Petroleum Co., 9 Cir., 55 F.2d 753, 776; State ex rel. White Pine Sash Co. v. Superior Court, 145 Wash. 576, 261 P. 110.

The surcharge of this item is sustained.

### (b) "Advancements" to Remaindermen

Mrs. Sophie Franz was a housewife without business aptitude or experience. For some months after the death of her husband, two of her sons looked after her business affairs until they moved away from St. Louis, where she then lived. Thereafter, these duties were assumed by a son-in-law, S. H. Kleinschmidt, under two successive powers of attorney, executed June 1, 1899, and June 13, 1905. This arrangement remained until the execution of the trust instrument on January 30, 1909.

Under Kleinschmidt, various amounts were paid out (always at the direction of Mrs. Franz) to the different children. Some of these payments were Christmas or birthday gifts; some were loans; and some were what are now involved. Of this last character, Kleinschmidt paid out in all to each of five children $8700 and to each of the other five $8800 or a total of $87,500. Within less than two months after execution of the trust instrument, the trustees paid $5000 to each of the ten children, at direction of Mrs. Franz. The total of all such payments was $137,500.

Upon receipt of any payment, both under Kleinschmidt and the trustees, the recipient signed a receipt prepared by Rassieur and Buder (G. A. Buder) formerly attorneys for Mrs. Sophie Franz. This receipt was in form following:

"I, the undersigned, one of the children of Ehrhardt D. Franz, late of the City of St. Louis, deceased, hereby acknowledge that I have this day received of Sophie D. Franz, widow of said deceased, the sum of ...... Dollars, on account of my share in the assets of said estate, given to her for life, it being understood that this is to be treated as an advancement made to me at the time the said estate is divided among the remaindermen, mentioned in last will of said E. D. Franz.

"Signed ......"

In the Ernst & Ernst audit in 1942, it is stated "the records indicate that the cash advances shown above ($137,500.00) were obtained from the following sources:

Cash in the Estate of Ehrhardt
D. Franz                    $ 36,704.54
Cash originally advanced by
Sophie Franz                 100,795.46
                          _____
                           $137,500.00"

The exceptions, at least of the Mississippi Valley Trust Company, claim these "advances" in the amount of $137,500 to be a part of the corpus of the estate of E. D. Franz to be proportionately shared by the remaindermen.

The Court made findings that, in December 1926, the trustees had received money from redemption of preferred stock belonging to the corpus of such estate; that, in January 1927, they had credited from such funds to themselves as trustees for Sophie Franz in "alleged" payment of "alleged advancements made by her the sum of $100,795.46"; that "the evidence does not establish an intent upon the part of Sophie Franz to create an indebtedness in her favor * * *" for this amount and that this amount was not a loan by nor an indebtedness to her from the estate of E. D. Franz or from the remaindermen; that if there were any such claim by Sophie Franz, she had not included such in the trust instrument; that the claim of the trustees for credit for this sum is disallowed and the trustees surcharged therewith and interest (6%) thereon from April 15, 1930 (Mrs. Franz died April 14, 1930); and that charges for advancements was allowable only for the $36,704.54, "representing cash from the Estate of Ehrhardt D. Franz, deceased."

Appellants contend (1) that the funds ($100,795.46) were taken by Sophie Franz from her personal estate and there was "an implied obligation" on the E. D. Franz Estate to repay this principal sum; (2) that the advancements were not gifts; (3) that she intended to and did include this claim in the trust estate created by her; (4) that she was entitled to reimbursement; (5) res judicata; (6) laches; (7) waiver or estoppel.

The evidence convinces that these funds came from the personal estate of Sophie Franz. Whether the trust instrument by Sophie Franz conveyed any legal claim, if such claim existed, to these trustees covering the $87,500 received by the children before creation of the trust need not be and is not determined but, for the purposes of this opinion, is assumed.

The most serious matter in this issue as to "advancements" is whether these payments were gifts or were to be repaid. Appellants contend that they were not gifts but either there was an "implied obligation" to repay or that her estate was "entitled to" reimbursement. Appellees contend that they were gifts. Such contentions are as to facts to be resolved from the evidence. Every word of this record has been read and carefully considered. The evidence definitely supports the contention that these payments were unsolicited; were made by Mrs. Franz as gifts to her children; and were so received and regarded by them. This evidence is that of a good mother, of simple needs and desires, who found pleasure in giving to her children some of the flood of wealth which poured in upon her and for which she found no other use. The findings of the Court as to this matter are fully sustained.

Appellants' contentions as to res judicata and laches are ruled adversely by Fiske v. Buder, 8 Cir., 125 F.2d 841 and Bickel v.

Argyle Inv. Co., 343 Mo. 456, 121 S.W.2d 803, 807.

The contention of waiver must be ruled against appellants. The basis of this contention in connection with "advancements" is, at least, no firmer than in connection with the "stock rights."

The surcharge of this principal sum of $100,795.46 must be sustained as resting upon substantial evidence. Since these "advancements" were gifts to the remaindermen (even though they might possibly have to be reckoned with, as between the remaindermen, in the final distribution of the estate of E. D. Franz among them), there arises a query as to whether she was entitled to any income from the above principal sum prior to her death. However, the interest allowed by the Court here is from her death. From that time, the remaindermen were clearly entitled to the use of this money. The recovery accorded for such use is at the legal rate of interest and must be sustained.

#### (c) Attorney Fees

In connection with the accounting of the trustees of June 22, 1931, as amended to July 1, 1931, the trustees claimed credit for legal services by their counsel, Buder & Buder, in the sum of $210,000. Exceptions were filed to this item. In the 1932 order, the Court passed thereon and allowed $115,-000 to be charged in equal parts against the interests of all of the remaindermen, with a provision that such allowance was without prejudice to "any further claim by Buder & Buder on account of said services against the estate of Sophie Franz." The legal services covered by this claim and allowance were solely for services rendered in this series of Franz estate *litigations* in the United States Courts, which began in 1924.

In the trust instrument of 1909, it was provided that the trustees "shall employ the firm of Buder & Buder, as their counsel and attorneys in the management and administration" of the trust estate. The annual fee for such legal service began with $825 for the year 1909 and increased to $10,000 for 1920 and thereafter. The legal

services apparently intended to be covered by this fee were all manner of service, such as advice to the trustees, Mrs. Sophie Franz and to the remaindermen as to matters connected with the trust and trust estate. These services covered all services except litigation. Shortly after creation of the trust, Ehrhardt W. Franz (one of the remaindermen) brought an action in the State Court which resulted in sustaining and construing the trust instrument. In 1922, Ernst H. Franz and Walter G. Franz (two of the remaindermen) died and The Mississippi Valley Trust Company was appointed as administrator of their properties in Missouri. In 1924, Ehrhardt W. Franz brought this action. After an appeal to this Court involving jurisdiction, Franz v. Buder, 8 Cir., 11 F.2d 854, and a modification of the decree thereon, 11 F.2d at page 858, all necessary parties were brought in. The alignment [4] of the parties was as follows: The estates of Ernst H. and of Walter G. Franz and a minor child of Mrs. Kleinschmidt (by guardian ad litem) with the plaintiff; the other remaindermen and Mrs. Sophie Franz with the trustees, as defendants. After mandate filed on the above appeal, all parties were brought in by an amended petition filed March 31, 1926. The same day, an ancillary bill was filed and an appealable order made thereon on April 8, 1926. Apparently, Buder & Buder began representing the 6⅔ remainder interests in *this litigation* shortly after the amended bill was filed. This representation continued until 1935 when these five out of the 6⅔ remainder interests employed other counsel. The one and two-thirds interests still retained Buder & Buder.

May 16, 1930, the six and two-thirds interests each agreed individually to pay Buder & Buder $15,000 per interest for services in this litigation "heretofore" rendered—a total of $100,000. No time for such payments was specified. In December, 1931, these amounts were paid under an understanding that such payments would, if paid at that time, also cover all future services to such remaindermen.

The claim involved here is for services, *in this litigation,* to the *trustees* as distin-

---

[4] "Alignment" is not used in the real legal sense (see *Franz v. Franz*, 8 Cir., 15 F.2d 797, 799–800) but as putting on one side those desiring similar results.

guished from the services to the before-stated remaindermen in the same litigation. Various contentions are advanced both by appellants and by appellees. Only such as are necessary to determine this matter will be set forth.

Appellees contend that these fees for legal services to the *trustees* cannot be charged against the remaindermen. This contention is well founded. The law as to whether remaindermen shall pay expenses of trustees, including proper counsel fees, depends primarily upon the intention of the creator of the trust. Walker v. First Trust & Savings Bank, 8 Cir., 12 F.2d 896, 903, 75 A.L.R. 757; Rossi v. Davis, 345 Mo. 362, 133 S.W.2d 363, 376, 125 A.L.R. 1111; In re Nichols' Trust Fund, 228 Mo.App., 489, 68 S.W.2d 917, 918; Melvin v. Hoffman, 290 Mo. 464, 235 S.W. 107, 116.

Paragraph F of the trust instrument attempts to give power to the trustees to pay attorneys' fees "out of said Trust Estate and funds." However, this provision has no force as to these remaindermen because beyond the power of the creator of the trust. Sophie Franz was not absolute owner of all of the property which she passed into the trust. The status of life estate and remainder was established by the will of Ehrhardt D. Franz. That status existed before the trust instrument. The trust instrument had to take that situation as it found it and could place no greater burden upon the remainder estates than the life tenant could have placed had there been no trust instrument. Missouri Central Building & Loan Ass'n v. Eveler, 237 Mo. 679, 141 S.W. 877, 879, Ann.Cas. 1913A, 486. The will of Ehrhardt D. Franz conveyed no power to the life tenant to consume the remainder estate. She was entitled to the entire income from the residue of the estate of her husband during her life. She had no right to impair or diminish that residue. Buder v. Franz, 8 Cir., 27 F.2d 101, 114; Miller v. Bowen Coal & Mining Co., Mo.App., 40 S.W.2d

485, 489. In this situation, the test by "intention" is ineffective. We must pass to those rules of law which the courts have developed to deal with situations where there is no guide of intention in any pertinent instrument.

These rules are based upon the equities as revealed by the facts in the particular case. However, recurrence of similar factual situations has naturally resulted in some rather generally accepted rules for decisions. One of these is that legal services in connection with the normal management and use of the property are to be paid out of income. If the legal services are caused by extraordinary situations arising during the management and use, the expense may be placed upon the life tenant, upon the remaindermen or apportioned between the two depending upon who necessitated the unusual legal services and/or who was benefited thereby.[5]

The legal services involved here are confined to those rendered in this varied and long continued litigation. Under the statement in the next preceding paragraph, such services are extraordinary. That they were necessitated by the denial of the rights of the remaindermen by the trustees, Buder v. Franz, 8 Cir., 27 F.2d 101, 115; Fiske v. Buder, 8 Cir., 125 F.2d 841, 848, and that such services were not beneficial but definitely detrimental to the remainder interests and were intended to destroy such interests is not and cannot be now questioned. Buder v. Franz, supra, 27 F.2d page 115; Fiske v. Buder, supra, 125 F.2d page 848; Wallace v. Fiske, 8 Cir., 80 F.2d 897, 907. The detrimental character to the remainder interests of these legal services for the trustees is emphasized by allowance of contribution from the 6⅔ interests to the counsel (Mr. Wallace) who represented the plaintiff (Ehrhardt W. Franz) in this litigation. Wallace v. Fiske, 8 Cir., 80 F.2d 897 and Fiske v. Wallace, 8 Cir., 117 F.2d 149.

Another reason why the exception to these legal fees was properly sustained is

---

[5] These rules are set forth and the authorities collected in a comprehensive annotation in 124 A.L.R. 1183 and 33 Am. Jur. p. 950, § 427. Also, Estey v. Commerce Trust Co., 333 Mo. 977, 64 S.W. 2d 608, 616; Fiske v. Buder, 8 Cir., 125 F.2d 841, 847 and see Abbott, Puller & Myers v. Peyser, 75 U.S.App.D.C. 162, 124 F.2d 524, 525.

the omission to inform the Court, at the hearing in 1931, that the 6⅔ interests were then under contract to pay Buder & Buder a fee of $100,000 for services to them in this litigation. Prior to the filing of the amended petition in this litigation, Sophie Franz and the remaindermen were not parties. For legal services up to that time, Buder & Buder were paid a fee of $10,000. Sophie and these remaindermen were made parties by that amended petition and representation of them by Buder & Buder in this litigation then began. The legal positions of the trustees and of these interests in this litigation were identical from the time answers were filed to this petition except as now set forth. The only legal services which might be regarded as particularly beneficial to the remaindermen or to some of them were (1) resistance to additional income taxes in connection with redemption of the Burroughs preferred stock; (2) resisting the attempt of the State of Missouri to collect inheritance taxes upon the interests of the 6⅔, as being part of the estate of Sophie Franz; and (3) resistance by the 6⅔ interests to contribution to the fee of Mr. Wallace who had been attorney for the plaintiff (Ehrhardt W. Franz) in this litigation.

As to the income taxes, the Burroughs Company employed counsel (one of whom was G. A. Buder) to oppose this tax for all of its stockholders consenting thereto. These trustees so consented. The result was a settlement for a much smaller amount than sought by the Government. Mr. Buder was paid a fee of $10,000 by the Burroughs Company. Thereafter, the trustees filed herein a petition for allowance of counsel fees to Buder & Buder covering these services. In open court, the trustees abandoned all such claim except as to the plaintiff and as to the estates of Walter G. Franz and Ernst H. Franz. The matter was heard as to these three interests and the allowance denied by an order entered July 6, 1936.

As to the inheritance tax and as to the Wallace fee matters, the testimony of Mr. G. A. Buder, Jr., (who was active therein as an employee attorney of Buder & Buder), is expressly that such services were covered by the above fee of $100,000. In addition, it may be added that all of the remainder interests, except one and two-thirds, were represented by other counsel at these times and not by Buder & Buder. Of the one and two-thirds interests, the one interest was of Gustav A. Franz, the other trustee.

From the foregoing, it is clear that the legal services to the trustees here involved were entirely the same and upon the same legal issues as those to the 6⅔ remainder interests; that the counsel for the trustees gave no legal services in these three matters, beneficial to the remaindermen, for which they have not already been paid or denied allowance; that, as to other legal services in this litigation, such were against the good of the remaindermen; and that for such services as they rendered the 6⅔ interests they have been fully paid.

In this situation, it is difficult to imagine Judge Faris would have made an allowance of $115,000, or of any amount, had he known that the 6⅔ interests were then obligated to pay Buder & Buder $100,000 for these parallel and identical services. There was an obligation on Buder & Buder to disclose this situation to the Court at that time.

Appellants emphasize that the 6⅔ interests knew fully that the $100,000 was separate and apart from a claim for $210,000 which the trustees intended to advance as legal services by Buder & Buder to the *trustees* as distinguished from the legal services rendered these interests. It is true that this situation was made clear to these interests. However, at the time these remainder interests obligated themselves to pay the $100,000 and at the time of payment, these remaindermen were clients of Buder & Buder in this litigation and they were not informed of their possible rights nor of the opposition in legal interests of themselves and Buder & Buder in connection with these fees.

### (d) Interest on Commingled Funds

The Court found that the trustees had permitted funds belonging to the Estate of Ehrhardt D. Franz to be commingled with the funds of Buder & Buder, a law firm in which trustee G. A. Buder was a partner; and that interest upon the Estate funds

so commingled, at six per centum, amounted to $7,957.27. That sum was surcharged to the trustees.

The allegation in one of the exceptions is that "sums of money belonging to the Corpus of the estate were deposited in the bank account of Buder & Buder and that there is due from Buder & Buder by reason thereof the sum of $30,126.88 (the amount found due from Buder & Buder in the report.) That said report does not make any allowance in favor of the Corpus of the estate for interest on funds belonging to said Estate deposited in the bank account and to the credit of Buder & Buder * * *." Therefore, exceptors asked that the trustees be charged with 6% interest on such funds during the time the "funds were deposited to the credit of and in the possession of the said Buder & Buder."

The evidence concerned with this item of surcharge is not clear in all respects. The period covered is subsequent to the death of Sophie Franz. The trustees' report here involved begins with the last previous report (June 22, 1931) and ends August 15, 1942. During this period, no books were kept in the name of G. A. Franz and G. A. Buder, Trustees. The auditors who prepared this report had to go to the books of Buder & Buder, the bank books of the trustees and to make a check of the securities held by the trustees in a safety deposit box.

The ledgers of Buder & Buder contained a number of entries the title of which indicated they were part of this trust estate. These entries were interspersed among other entries of matters presumably relating solely to the business of Buder & Buder. Also, there was a separate bank account of the trustees. The method used by the auditors was that they "took all the other (trust estate) accounts in the ledger, analyzed all the transactions, both debit and credit. Those that involved either money received or credits to one of these estate accounts we would charge to an account called 'Buder & Buder.' All moneys that were paid out and charged to any of these ledger accounts we would credit Buder & Buder." Also, the bank account of the trustees and their cancelled checks were examined. Some of the ledger credit items

to the trust estate appeared in the bank account of the trustees. The "bulk of the funds or (ledger) account" did not appear in the bank account of the trustees. The auditors did not examine the bank account of Buder & Buder but "expect that we were told that they were handled through their (Buder & Buder) books—through their own bank account." Since there were practical difficulties in trying to trace any specific amount into the deposits, the auditors "went on the theory that we were not going any farther than to charge it to Buder & Buder or give them credit." This debit or credit "technically" represented the balance due from the trustees. All parties were agreeable that the report be made up as it was. The balance meant the amount for which the trustees were liable in cash "or any other assets acceptable to the Trust Estate."

The auditors made up (for evidential purposes) a table showing, by months, the balance credit or debit due to or from Buder & Buder. This table began with June 22, 1931, and ended with August 15, 1942. The credit and debit lines moved back and forth—sometimes Buder & Buder would have a credit for some months; then the credit would change to debit for some months. Also, the monthly amounts varied, sometimes widely. Beginning with August 1938, up to the end of the reported period (August 15, 1942), there was a constant monthly debit against Buder & Buder varying from $35,030.10 to $30,126.88. The interest here in question was at 6% simple interest on $30,126.88 for this period beginning August 1, 1938, up to August 15, 1942. The amount allowed ($7,957.27) is incorrect and should be $7,305.76.

Appellants urge here six contentions. Three of these seem to strike at the allowance of any interest while three set forth different grounds for diminution of the allowance.

First, as to the three contentions that there should be no allowance for interest.

One of these contentions is that the "Commingling of Funds actually cost Estate nothing." A second contention is "that even though no separate set of books of the trustees was maintained in the office

of Buder & Buder that separate accounts consisting of separate pages in the ledger of Buder & Buder were maintained in the name of the trustees of the Franz Estate." The third contention is "that the method of keeping their books and accounts had previously been approved by this Court."

As to the first contention. The supporting argument is that the commingling caused no loss because banks were not paying any interest on checking account deposits. Appellants cite Cornet v. Cornet, 269 Mo. 298, 190 S.W. 333, 343-344, where only the interest paid by a bank on monthly balances was allowed. In that case, the Court stated that the trustee's bank account always had a balance greater than the trust funds commingled therein; that the trustee used reasonable care to keep the trust funds invested; that the trust funds had not been used to profit the firm beyond this interest; that the trust fund lost nothing by this practice; and that the commingling was through ignorance of any rule of law against commingling—the trustee being a businessman.

▆▆▆ That case is not in point and this contention cannot be allowed for the reason that the evidence fails to show what happened to these commingled funds except that they came into the trustees and *supposedly* went into the Buder & Buder bank account. Since there were no deposit items covering them in the bank account of the trustees, they were charged against "Buder & Buder" (really against the trustees) without tracing particular items into any bank account or into any investment— this method being agreeable to all parties. Hence there is no showing of a fact situation even similar to that in the Cornet case nor is there any evidence as to what happened to these funds even if they passed into the Buder & Buder bank account. Whether the funds remained in the bank in the account of Buder & Buder or were used is not shown. Whatever the actual profit to others than the trust or whatever the actual loss to the trust are matters within the knowledge of the trustees and the burden is upon them to produce evidence of such if they wish to avoid the rule allowing interest. Cruce v. Cruce, 81 Mo. 676, 685.

Both of the two other contentions are concerned with the method of bookkeeping. Admittedly, this method was far from good bookkeeping practice, which would have been separate sets of books for the Sophie Franz estate and for the remaindermen estate, both being in control of the trustees under the trust agreement. Such proper method was indirectly suggested by this Court as early as 1929. Franz v. Buder, 8 Cir., 34 F.2d 353, 356. However, the method of bookkeeping used by the trustees is, in no wise, vital to the issues here. It did occasion difficulty to the auditors in preparing the present report; and it did affect the form of that report. In this report (acceptable as to form to all parties), it appeared that funds shown by the books as coming into the remaindermen interests were not accounted for in the bank deposits of the Trustees' account. Therefore, they were charged, in the report, as due from Buder & Buder—more accurately from the Trustees. What use was made of such funds does not appear, possibly except as to one item covered by one of the three contentions aimed at diminution of the interest allowed. It is the absence of these funds in the bank account of the trustees and for which they were answerable that is the dominating factor rather than the method of bookkeeping through which that result was reached.

▆▆▆ We need not discuss at length the law applicable to this situation. The broad rule is well stated in 54 Am.Jur. p. 248, § 313 as

"Failure of a trustee to keep the trust property and funds separate, his commingling of them with his own or other property and funds except where authorized by the express or implied terms of the trust, * * * is a violation of his duty as trustee which renders him liable for any loss therefrom with interest, irrespective of any other fault on his part, and any profit or gain resulting therefrom inures to the trust estate."

In the absence of definite evidence as to profits or greater loss, the measure of the loss to the trust beneficiaries where there is commingling of funds is legal interest, McIntire v. McIntire, 192 U.S. 116, 124, 24 S.Ct. 196, 48 L.Ed. 369; Hinckley v. Gil-

man, C. & S. Railroad Co., 100 U.S. 153, 157, 25 L.Ed. 591; Gaskins v. Bonfils, 10 Cir., 79 F.2d 352, 355, or compounded interest, in the discretion of the Court. Barney v. Saunders, 16 How. 535, 542, 14 L. Ed. 1047; Silver King Coalition Mines Co. of Nevada v. Silver King Consol. Mining Co. of Utah, 8 Cir., 204 F. 166, 180, Ann. Cas. 1918B, 571. This measure is recognized in Missouri. Enright v. Sedalia Trust Co., 323 Mo. 1043, 20 S.W.2d 517, 522-523; Cruce v. Cruce, 81 Mo. 676, 682.[6] Therefore, the amount of interest here must be sustained unless it is diminished for one or more of the reasons advanced in the three other contentions.

One of these three other contentions is that "If charged with interest upon balance in favor of Estate, Trustees are entitled to interest upon balance against estate."

The tabulation made by the auditor shows balance in monthly amounts: due to Buder & Buder beginning June, 1931, and ending June, 1932, varying from $3,529.54 to $6,769.80 (five months running above $6,000); due from Buder & Buder beginning July, 1932, and ending April, 1933, July and August being $59,775.17, September being $53,688.78, October and November over $8,000 and the remaining five months between $797.81 and $718.29; due to Buder & Buder beginning May, 1933, and ending July, 1938, being approximately $3,000 the first five months, between $5,033.19 to $5,984.83 the next nine months, slightly over $6,000 the next five months, $8,000 plus the next fifteen months, approximately $10,000 the next nine months, between $10,587.08 and $10,877.32 the next twelve months, $11,375.92 the next eight months; and due from Buder & Buder beginning August, 1938, and ending August 15, 1942, being approximately $32,000 the first three months, over $31,000 the next four months, over $30,500 the next three months, over $33,000 the next four months, over $32,500 the next ten months, $32,456.64 the next three months, over $31,000 the next five months, $35,030.10 the next two months, over $34,800 the next five months, approximately $33,800 the next nine months, and $30,126.88 for August, 1942. This fact situation has been detailed to show the practical difficulties in computing interest which should be allowed.

There is no settled rule of law in assessing interest against trustees for funds for which they are accountable and for the use of which they make no explanation showing actual earnings therefrom. "Every case must be determined according to the facts and circumstances peculiar to it * * *." Cruce v. Cruce, 81 Mo. 676, 688; also, see the authorities last above cited, including footnote 6. Apparently, what the Court did was to allow interest on the smallest amount which was continuously due from Buder & Buder for the period next preceding the date of the report. Considering the complicated situation facing the Court in determining the basis of interest computation, we cannot say that the result reached did not accomplish substantial justice.[7]

The second contention is that "Credit not given for purchase of $10,000.00 worth of bonds." In a checkbook of "G. A. Franz & G. A. Buder, Trustees," appeared a check stub showing check for $10,000 on February 11, 1942, to Commerce Warren County Bank for purchase of "10 G Bonds 2½%, 12 years defense, ten bonds $1000.00 each." The cancelled check showed issuance by "G. A. Franz and G. A. Buder, Trustees by G. A. Buder Surviving Trustee."

The auditor testified as follows: That he could not tell whether this check covered funds from the Ehrhardt D. Franz (remainder) estate or from some other, since

---

[6] Guides to further authorities may be found in In re Ricker's Estate, 14 Mont. 153, 35 P. 960, 29 L.R.A. 623; 30 Am. Jur. 50, § 63; 37 A.L.R. 459; 55 A.L.R. 952; 112 A.L.R. 838; 156 A.L.R. 944 and In re Reed's Estate, 37 Wyo. 107, 259 P. 815, 55 A.L.R. 941.

[7] Appellants cite but one authority. This is a quotation from Williams on Executors (12 ed.) p. 1222 to the effect that if an executor advances his own funds to pay "the debts of his testator which carry interest, or to satisfy some of his testator's creditors who are very important and threaten to bring actions," he is entitled to interest upon the funds so advanced. No such situations are here shown to exist.

the original amount in this checking account was taken from the balance shown in the checkbook when the audit began and there was no statement as to which of the estates (Sophie or Ehrhardt D.) it belonged. That, toward the end of the audit, he had asked the trustees to show him all securities held by them belonging to this Ehrhardt D. Franz estate. That he was taken to the safety box and shown various securities; made a list of them; and they are shown in the report—even those regarded as "worthless." He was not shown any "G" bonds. That no credit for any interest from such bonds appeared in any entry as to this estate. That the balances shown by his audit against the trustees showed money of the estate not accounted for on the bank books of the trustees and might be satisfied by cash "or any other assets acceptable to the trust estate" as he made no breakdown of such balance. That no objection was made to him by anyone as to these balances. Appellants introduced a file from the Probate Court entitled "Inventory & Appraisement No. 71459 in the Estate of Sophie Franz, Deceased," filed June 14, 1930—no part of the file, except the title, appears in this record. The purpose of introducing this file was stated to be "to show the inventory of certain notes as assets of this (Sophie Franz) estate." Although testifying after the evidence as to purchase of the bonds was introduced, Mr. G. A. Buder, who signed the check for them, was silent as to this bond transaction.

The substance of the argument of appellants is that the check shows that $10,000.-00 in bonds was purchased by the trustees and that this purchase must have been from the Ehrhardt D. Franz estate funds since there had been an inventory and appraisement of the estate of Sophie Franz, deceased, years before this bond purchase and, therefore, there were no funds of her estate in the hands of the trustees at the time of the bond purchase.

This argument is not established by the fact that there was an inventory and appraisement of the Estate of Sophie Franz in the Probate Court as of June 14, 1930. This is so because this record is definite that all her property did not pass from the trustees to her executor by that date. In the report of the auditors (Cornell) of June 22, 1931, is the statement following:

"We find that the assets of the Estate of Sophie Franz, as set forth in Exhibit 'A,' are all in the possession of Messrs. G. A. Franz and G. A. Buder, Trustees, except the following, chargeable to the Excutor:

| | |
|---|---|
| Cash on Deposit, Mercantile-Commerce Bank and Trust Company | $155,693.32 |
| Cash Distributions to Heirs | 45,000.00 |
| Amount Chargeable to the Executor on the Books of Buder and Buder | 19,369.06 |
| Burroughs Adding Machine Company Dividend Receivable | 7,062.50 |
| Accrued Interest Receivable, Accruing after April 14, 1930 | 23,916.97." |

These aggregate $251,041.85, while the total of assets of Sophie Franz was $1,811,-194.91, as shown on Exhibit A of this (1931) report. In this Exhibit A, which is entitled "Estate of Sophie Franz," as an asset appears an item "Cash on Deposit—Mercantile-Commerce Bank & Trust Company, Trustees' Account $35,517.70." Also, another asset item "with Buder & Buder, Due Trustees $21,069.11." In the Report of August 15, 1942, the auditors state:

"Certain transactions involving the Estate of Sophie Franz were intermingled in the accounts relating to the Estate of Ehrhardt D. Franz, and it is possible that an examination of the transactions relating to the Estate of Sophie Franz might disclose the necessity of adjusting or revising the statements presented herein."

When all of the property of Sophie Franz passed from the trustees to her executor is not shown in this record. Her estate is still in course of probate. Therefore, whether these bonds were purchased from funds belonging to her estate but held by the trustees or from funds belonging to the trust estate is not determinable from the evidence.

In view of all of the before stated facts, we cannot decide that the allowance of interest upon the $10,000 (as a part of

the amount due from the trustees) was error. We do not determine whether these bonds were or were not bought with funds of the trust estate. What we do determine is that the evidence in this record fails to establish that they were so bought and that, as a result, the trustees are not excused from liability for interest for this unaccounted for sum.

▆▆▆ Now as to the third matter, being $1,814.14 which was in cash in the account of the trustees on August 15, 1942, the date of the present Report. The auditor testified that this sum existed and should be deducted from the $30,126.88 shown on the report as the balance then due from the trustees. The issue before us is not whether the final sum for which the trustees are accountable should be $30,126.88 or that amount less $1,814.14. Our problem is one solely of the allowance of interest. The inclusion or exclusion of the $1,814.14 is pertinent only as it may affect this matter of interest to be surcharged the trustees on varying monthly balances over the stretch of years. The measure of interest adopted by the Court was the legal rate for the slightly over four years which ended with the date of the report (August 15, 1942) and during all of which there was a sizeable balance due from the trustees. This rate was calculated upon the amount of the smallest monthly balance during that period—which balance happened to be the balance finally due. Hereinbefore, we have approved that method as resulting in substantial justice. If allowance of interest is to be affected—reduced—by this cash balance of $1,814.14 it must, of course, be by reducing, in that amount, the principal sum ($30,126.88) upon which the allowed interest was based. Putting aside any consideration that this cash balance could not be used to affect the allowed interest which was reached in the way outlined, yet there would have to be some showing additional to the mere existence of this cash balance on August 15, 1942, the final date covered by allowed interest. In this situation, there are two reasons why this contention of appellants should not prevail. One of these is that the record is silent as to how long this cash balance had existed. Whether it was recent, existed during part of the four year period or during all of it, we are not informed. The other reason is that even if we could assume—and we cannot—that this cash balance existed during the entire four years, yet it would have reduced the monthly amounts below $30,126.88 in only twelve months scattered through the four years,[8] and in only three of these twelve months would the reduction have reached one thousand dollars. In such a situation, there is no basis for permitting the cash balance to have any effect upon the interest allowance on commingled funds.

### III. Participation of the 3⅓ Interests

In our hereinbefore consideration of the propriety of each of the four surcharged items, we have ignored any effect thereon of the right of participation therein of the 3⅓ remainder interests. Such method of treatment avoided confusion and repetition. However, this method was not intended to affect determination of this issue of participation.

Based upon like findings of fact and conclusions of law, the final order and decree, appealed from here, recited:

"That the credits disallowed and the amounts surcharged against the trustees constitute assets and property of the estate of Ehrhardt D. Franz, belonging to the ten remaindermen under the will of said Ehrhardt D. Franz, in equal shares, and that each of said remaindermen is entitled to share equally in the benefits thereof and to participate in the distribution thereof."

Another provision listed the hereinbefore examined surcharges as items—with other items—under the statement:

"That the assets and property constituting the corpus of the estate of Ehrhardt D. Franz, in the possession of and chargeable to the trustees, after the disallowance of credits and after the addition of surcharges found and imposed by this decree, but subject, however, to such additions, deductions and adjustments as the court may order and direct, as provided in paragraph 12 hereof, are as follows."

---

[8] These twelve months are two in 1938, five in 1939, two in 1940 and three in 1941.

A further provision stated the individual distributive share of each of the ten remainder interests in this corpus.

Appellants contend that, even if the surcharged items are approved, the 3⅓ interests are barred from participation therein. They present the contentions following: (1) The "Status of 3⅓ interests differ from that of 5 exceptors * * *" in that the former were at all times represented by independent counsel while the action of the Court in sustaining the four exceptions (surcharges) was predicated upon the situation that the 5 exceptors were not represented by impartial counsel before and at the Cornell final accounting in 1931; (2) the judgment of the Cornell accounting report is res judicata as to three (stock rights, advances and counsel fees) of the four surcharges; (3) the "Conduct of Mississippi Valley Trust Company and plaintiff estopped them * * *" because each of them accepted and receipted for the "full distributive share" under the Cornell Report judgment in performance of mutual promises of themselves and of the trustees not to appeal from that judgment; (4) the Mississippi Valley Trust Company, in behalf of its two interests, cannot share in surcharges of advances and of interest since it admitted, in connection with the 1931 accounting report, that the advances were proper deductions by the trustees, and the plaintiff cannot recover as to advances and interest because he took no exception to this deduction of advances—also there has been undue delay; (5) the 3⅓ interests cannot share in the surcharged attorney fees because that is res judicata as to them, and any relief should be confined to the 6⅔ interests who paid the $100,000 fee to Buder & Buder.

Before we consider these contentions of appellants, we must dispose of a matter which is sharply contested. That matter is the more general contention of whether, irrespective of the merits of any of the above contentions, the 3⅓ interests must be barred from participation. Appellants urge: that each of the ten remainder interests had a "separate, several and ascertainable interest" in this trust estate; that the trial court and this court have, throughout this litigation, so treated these interests; and that, where there are such separate interests, the governing law here permits a judgment to be set aside as to some parties affected thereby, confines the relief to the parties seeking it, and this is particularly true where the grounds for relief do not apply to others affected by the judgment. Appellees urge that the corpus of this trust is in the control of the trial court for purposes of administration and closing; that this jurisdiction could be exhausted only by a final decree disposing of all of the property and discharging the trustees—thereby terminating the case; that the decree of 1932 on the Cornell report was interlocutory; that the Court had and exercised (in 1942) jurisdiction to require, of its own motion, a final accounting and report; that the inability of the Mississippi Valley Trust Company "to initiate the proceedings which led to the District Court's findings" in connection with the 1942 accounting does not preclude it from obtaining its distributive shares therein; and that the nature of the credits surcharged and the circumstances under which they arose were such as to require an allowance or disallowance of each in toto.

Appellants cite many cases dealing with various situations where the courts have limited recovery, resulting from vacation of a decree or judgment, to a particular party causing such vacation, although other parties to the litigation were similarly interested.[9] We understand appel-

9 These cases are McIntosh v. Wiggins, 354 Mo. 747, 191 S.W.2d 637, certiorari denied 328 U.S. 839, 66 S.Ct. 1015, 90 L.Ed. 1614; Id., 356 Mo. 926, 204 S.W. 2d 770; Id., 8 Cir., 123 F.2d 316, certiorari denied 315 U.S. 815, 62 S.Ct. 800, 86 L.Ed. 1213; Crow v. Williams, 104 Mo.App. 451, 79 S.W. 183; Pacific Express Co. v. Emerson, 101 Mo.App. 62, 74 S.W. 132; Hadley v. Bernero, 97 Mo. App. 314, 71 S.W. 451; Neenan v. City of St. Joseph, 126 Mo. 89, 28 S.W. 963; Powell v. Perry, 63 Ga. 417; Lewis v. Conrad Seipp Brewing Co., 63 Ill.App. 345; Felsenthal v. Durand, 86 Ill. 230, 232; Southern Railway Co. v. Glenn's Adm'r, 102 Va. 529, 46 S.E. 776; Ridgway v. Toland, 43 N.J.L. 585; Davis v. Walker, Tex.Civ.App., 233 S.W. 521; Sparrow v. Bromage, 83 Conn. 27, 74 A.

lees (the 3⅓ interests) do not dispute that there are various situations where a party securing vacation of a decree or judgment may be the only one entitled to the benefit thereof—a vacation pro tanta—but they assert that such conclusion neither can nor should result where the decree or judgment vacated is interlocutory in a proceeding where the court is administering property in its control. Thus, comparison of these opposed positions shows that the line of cleavage as to the *power* of the court narrows to situations where the court vacates interlocutory orders, decrees or judgments affecting the rights of parties in or to property in its control for administration. We think the real issue here is even more limited than just stated, as we shall presently make clear.

We have read and considered all of the cases (footnote 9) cited by appellants as well as many others. Of the cited cases, only four have any connection with property in judicial control for administration and distribution. Those are the three cases involving the Liggett estate. McIntosh v. Wiggins, 354 Mo. 747, 191 S.W.2d 637, certiorari denied 328 U.S. 839, 66 S.Ct. 1015, 90 L.Ed. 1614; Id., 356 Mo. 926, 204 S.W.2d 770; Id., 8 Cir., 123 F.2d 316, this Court, certiorari denied 315 U.S. 815, 62 S.Ct. 800, 86 L.Ed. 1213, and Southern Railway Co. v. Glenn's Adm'r, 102 Va. 529, 46 S.E. 776.

The three McIntosh cases were different phases of a contest between a life tenant and a remainderman over title to property. This property had devolved through a testamentary trust. Before any of this litigation had begun, the trust had expired by its own terms. When the trust period ended the testamentary trustees had a large amount of property on hand. Promptly, the trustees brought an action to have the state court determine the assets of the trust on hand, to approve the final accounts of the trustees, to direct distribution, and "to construe the will to the extent necessary therefor." See Wiggins v. Perry,

Mo.Sup., 271 S.W. 815, 818. This accounting suit included all of the then living descendants of the testator and there was no appeal from the decree therein. This decree declared the trust period ended; approved the administration of the trust estate by the trustee; vested title to about one-fourth of the property in a grandson of testator; and directed distribution thereof. As to the other three-fourths of the trust property, the Court made no adjudication of title nor construed the will setting up the trust as to such title but directed that the trustees "deliver" and "convey" to the three daughters of testator the remaining three-quarters of the property to "be held and enjoyed by them under and subject to the provisions of said will" and expressly leaving open the right of the daughters and of their descendants to bring actions to construe the will as to whether the daughters took as life tenants or absolutely. 271 S.W. 815, 819. Under this decree, the trustees so "delivered" most of the three-fourths—for reasons not material here, some of such property was not delivered. Thereafter, an action was brought by the daughters, to which all interested persons (including the trustees) were made parties, to construe the will as to the title of the daughters and of their descendants. The result of this suit was to determine that the daughters took as life tenants and their descendants as contingent remaindermen, Wiggins v. Perry, Mo.Sup., 271 S.W. 815. This decision affirmed the decree of the trial court. The affirmed decree contained a provision which has caused the later litigation, including the McIntosh cases. This provision was, in effect, that, on the death of Mrs. Fowler, one of the life tenant daughters (who was then childless), if she died childless, her one-third interest should pass in undivided halves to the two other sisters for life and on the death of either of them thereafter to the surviving sister for life. Mrs. Fowler died childless. Shortly after her death, a second sister (Mrs. Kilpatrick) died

1070, 27 L.R.A.,N.S., 209, 19 Ann.Cas. 796; Wright v. Churchman, 135 Ind. 683, 35 N.E. 835; Santa Barbara Live Stock & Farming Co. v. Thompson, 46 Cal. 63; Osmont v. All Persons, etc., 165 Cal. 587,

133 P. 480; McKinley v. Tuttle, 34 Cal. 235; Stewart v. Parsons, 5 N.D. 273, 65 N.W. 672; Humphrey v. Holland, 192 Ky. 168, 232 S.W. 642.

leaving a child and a grandchild (daughter of a deceased child of Mrs. Kilpatrick). The survivor of the three daughters (Mrs. Wiggins) then took over the half interest life estate from Mrs. Fowler which had, under the decree, passed to Mrs. Kilpatrick. A series of litigations has resulted between the daughter or the granddaughter of Mrs. Kilpatrick or both on one side and Mrs. Wiggins and, later, her administrators on the other side.[10]

We have set forth these two earlier decisions in the Liggett Estate litigation for a better understanding of the later phases of that litigation in which the cited McIntosh cases had place. The first of these two cases was the accounting case based upon a report of the trustees and their need for directions from the Court as to the proper distribution of the property remaining in the trust which had ended by its own terms. The second was an action to construe the Liggett will, creating the trusts, and was a contest between life tenants and remaindermen as to their respective titles in certain of the trust property.

Three later cases set the stage for the cited McIntosh cases. The first of these was an action at law in the federal court by Mrs. Perry (later McIntosh) against Mrs. Wiggins to determine adverse claims to real estate (part of the trust estate). The judgment against Mrs. Perry was affirmed by this Court because of the state of the appeal record without examination of the merits. Perry v. Wiggins, 8 Cir., 57 F.2d 622, certiorari denied 287 U.S. 609, 53 S.Ct. 12, 77 L.Ed. 529. The next matter was a motion by Mrs. Perry and Mrs. Kennard (the granddaughter) filed in the will construction suit for a nunc pro tunc correction of the judgment in that suit. This motion was denied and the denial affirmed because of insufficient evidence to justify a nunc pro tunc order. Wiggins v. Perry, 343 Mo. 40, 119 S.W.2d 839, 126 A.L.R. 949. In a later suit to have declared void the troublesome provision of the decree in the will construction suit, by Mrs. Kennard against Mrs. Wiggins, the plaintiff prevailed and she was

held entitled, on the death of her grandmother (Mrs. Kilpatrick), to one-half of the undivided one-half of the property enjoyed by Mrs. Fowler as life tenant and which Mrs. Wiggins had taken over on the death of Mrs. Kilpatrick. The decree was affirmed. Kennard v. Wiggins, 349 Mo. 283, 160 S.W.2d 706. The basis of this last action was that plaintiff was a minor when the will construction decree was entered and she was not properly represented in that matter. The last matter was a further step in the Kennard case which had to do with recovery of interest on the funds recovered by Mrs. Kennard from Mrs. Wiggins, 353 Mo. 681, 183 S.W. 2d 870.

We come now to the McIntosh cases cited by appellants. On the day Mrs. Kennard filed her suit in the state court, Mrs. McIntosh filed an equity action in the federal court to enjoin Mrs. Wiggins from having the benefit of the disputed provision in the decree of the will construction case and to require her to turn over the property received from the life estate of Mrs. Fowler. The trial court dismissed the petition on the grounds that the will construction decree was res judicata as to plaintiff and no sufficient showing of fraud, mistake or imposition in connection with the decree had been made. This Court affirmed, McIntosh v. Wiggins, 8 Cir., 123 F.2d 316, certiorari denied 315 U.S. 815, 62 S.Ct. 800, 86 L.Ed. 1213, rehearing denied 315 U.S. 831, 62 S.Ct. 914, 86 L.Ed. 1224. Thereafter, Mrs. McIntosh brought an action for a declaratory judgment against the administrators of Mrs. Wiggins, who had died about the time the Kennard decree became final. The corpus of the property in dispute was then delivered to Mrs. McIntosh along with interest thereon from date of death of Mrs. Wiggins. After this, only the income from the property received by Mrs. Wiggins between the death of the mother (Mrs. Kilpatrick) and Mrs. McIntosh and the death of Mrs. Wiggins was involved. The theory of this action rested essentially upon plaintiff's construction of the effect of

---

[10] Wiggins v. Perry, 343 Mo. 40, 119 S.W.2d 839, 126 A.L.R. 949; Kennard v. Wiggins, 353 Mo. 681, 183 S.W.2d 870; the McIntosh cases, supra; and Perry v. Wiggins, 8 Cir., 57 F.2d 622.

the Kennard decree as establishing a like right in her. A judgment for plaintiff was reversed. McIntosh v. Wiggins, 354 Mo. 747, 191 S.W.2d 637, 642. The Supreme Court of Missouri held that plaintiff was not a party to the Kennard suit; that the Kennard decree was no determination that the will construction decree was void as to plaintiff; that the original decree was not such an entirety that it could not be voided as to Mrs. Kennard without being so as to plaintiff; that Mrs. McIntosh could have appealed from the original decree and showed no valid reason for not so doing; that the original decree was res judicata as to her; and that the differences in grounds for relief in this and in the Kennard suit were sufficient "to fully explain the difference in the results" in the two actions— those differences being the infancy of Mrs. Kennard in her case and the defense of res judicata available in the McIntosh case. The last McIntosh case, 356 Mo. 926, 204 S.W.2d 770, was an appeal from the judgment entered on the mandate from 354 Mo. 747, 191 S.W.2d 637. This last appeal was based upon the two contentions: that certain Missouri statutes were violated by the decision resulting in the mandate and that when a court inadvertently determines the title to the same property is in two different persons at the same time its judgment is void. The judgment was affirmed. The Court stated, 204 S.W.2d 770, 773: "In the Kennard case we did not hold the original decree (in the will construction case) void but ruled only that Mrs. Kennard should be relieved of the effect of that part of the decree subjecting her interest to a life estate in Mrs. Wiggins."

We have set forth this Liggett Estate litigation with some detail because it has to do with Missouri law, as well as decisions of this Court; and also because it is necessary to determine the authority of these cases here. For the latter purpose, several matters are important. First, the only case involving an accounting by the trustees was the one brought by them wherein all persons interested were made parties, the accounts were approved, no appeal was taken therefrom, and no attack has ever been made thereon during any of the subsequent litigations. Second, all of the subsequent litigations were title contests purely between the beneficiaries of the trusts. In short, none of this litigation had to do with the duties, obligations or rights of the trustees connected with their administration of the trusts. Being of this character, these cases are not pertinent to the present situation which is concerned entirely with the duties, obligations and rights of the trustees connected with their administration of this trust, which actions of the trustees are challenged by beneficiaries or quasi-beneficiaries. This is the more limited issue here, to which we have hereinbefore called attention.

The remaining citation by appellants, Southern Railway Company v. Glenn's Adm'r, 102 Va. 529, 46 S.E. 776, is a case involving acts by a trustee in course of administration of a trust estate. There were cross appeals by the representative of the deceased trustee and by a beneficiary. We are concerned only with the appeal by the administrator of the trustee. These appeals were from a decree entered on mandate issuing from an earlier appeal. 98 Va. 309, 36 S.E. 395. The former appeal resulted in reversal of a final decree (allowing compensation to the trustee beyond that expressed in a trust deed for the benefit of creditors) with "directions to disallow said additional compensation in settling the accounts of the trustee, as to the *appellants* in that cause" (italics added). The former appeal had been by the Southern Railway Company suing for itself and in behalf of all other creditors except three which were named. When the decree on the mandate was entered, it accorded relief not only to the Southern but to all other creditors except the three expressly not joined in the appeal. The second appeal (from this last decree) was, as concerned the trustee, from the allowance of relief to any but the Southern, which was the only named appellant. The Court stated, 46 S.E. 776, 777, that the former opinion and mandate "expressly limit the benefits of the decree then made to the appellants in that cause. Therefore the question presented for our present consideration is, who were the appellants before this court on the former appeal?"

The Court held that the statutes allowing appeals required that all appellants be named in the petition or petitions for appeal; that there were situations where parties not appealing nor even technically parties to the action might be affected by a decision on appeal if they stood upon the same ground and their rights are involved in the same question so that the decision "must of necessity affect all alike" 46 S.E. page 778, but that here the rights were separate and not equally affected by the same decree; and, therefore, that only the Southern was intended to and did get relief under the former appeal.

█ We are not concerned with the statutory limitation of appeals in this decision. However, the determination that beneficiaries in the trust there involved may be so separately and unequally affected by a decree disallowing compensation to a trustee has a bearing upon our problem. In the absence of controlling authority in this jurisdiction—none such having been brought to our attention—we incline to follow this decision to the extent of the existence of power in a court administering a trust to treat an interlocutory order or decree concerning such administration as fixed as to some parties and not as to others where interests of the respective parties are sufficiently separate. But the existence of such power does not control the exercise thereof. It does not mean that the trial court cannot treat all interests alike even though they may have such separate quality. Here, the trial court has treated all alike. The burden is upon appellants to show such action to be error. This they seek to do upon the grounds hereinbefore stated. We are not now determining whether these remainder interests are thus separate as we believe that, even if they are such, appellants cannot prevail.

█ We deem it unnecessary to examine separately each of these contentions of appellants, because of a situation which governs all. This large situation is as follows. The decree in the accounting in 1932 was an interlocutory decree in the course of administration of the trust estate. The Court had power to and did order a further accounting report in 1942. The 1942 report and the hearings on exceptions thereto developed that there were four items with which the Court determined the trustees should be surcharged (stock rights, "advances," counsel fees and commingled funds). We have hereinbefore determined that all of these surcharges were proper. The Court decreed that these surcharges were parts of the "corpus" of the trust estate. The Court decreed further that the ten remainder interests should participate in the distribution of that estate. From such decree, no remainder interest appeals. Only the trustees, as such, appeal. Therefore, the purposed effect of the challenge, on this appeal, of the right of participation to the 3⅓ interest is for the trustees to retain and profit to the extent such participation is denied. No principle in the law of trusts is more settled than that a trustee will not be allowed to profit out of his administration of a trust, even where there is no loss to the estate and no wrong is intended by the trustee. Magruder v. Drury, 235 U.S. 106, 119-120, 35 S.Ct. 77, 59 L.Ed. 151; Woods v. City National Bank & Trust Co. of Chicago, 312 U.S. 262, 269, 61 S.Ct. 493, 85 L.Ed. 820; Jackson v. Smith, 254 U.S. 586, 589, 41 S.Ct. 200, 65 L.Ed. 418; Covey v. Pierce, 229 Mo.App. 424, 82 S.W.2d 592, 598. In the face of this fact situation and of this principle of law, there must be compelling reasons clearly proven before the result sought by appellants can be allowed. Such reasons can be found only in the voluntary acts of the fully informed beneficiaries involved. That these remaindermen were not fully informed as to the large counsel fees paid to Buder & Buder by the 6⅔ interests is clear. Whether they had knowledge of the repayment of the "advancements" to the estate of Sophie Franz is, to say the least, doubtful. In this situation, no res judicata, estoppel, laches nor even express release by these remaindermen can be a bar. Michoud v. Girod, 4 How. 503, 561, 11 L.Ed. 1076; Bilton v. Lindell Tower Apartments, Mo. Sup., 213 S.W.2d 952, 958; Clyce v. Anderson, Ex'r of Griswold, 49 Mo. 37, 41-42; 132 A.L.R. 1522 note; and see Mueller v. Grunker, 145 Mo.App. 611, 123 S.W. 469,

472. Nor are we to assume that had these facts been known to the Court in 1932, the decree then entered would have followed. See Weil v. Neary, 278 U.S. 160, 170-171, 49 S.Ct. 144, 73 L.Ed. 243.

It is urged that the two interests represented by the Mississippi Valley Trust Company are barred because there was an understanding between the trustees and the Trust Company that the Trust Company would not appeal from the 1932 decree and could accept distribution substantially under that decree if the trustees would not appeal therefrom. No evidence as to such understanding was introduced prior to filing the findings of fact and conclusions of law and entry of the decree. This situation appears only in offers of proof in connection with the motions for new trial. These motions were directed to a new trial or reopening of the case for introduction of the matters covered in the supporting affidavits. There was no claim that this evidence was newly discovered but it was expressly stated by counsel for the trustees that they were addressing these motions and matters to the sound discretion of the Court. Since we have approved hereinbefore the action of the Court in denying the motions, we cannot consider these matters in disposing of the merits of the case. Our conclusion is that this challenge as to participation of the 3⅓ interests must be denied.[11]

## Conclusion

We determine that each and all of the contentions of appellants are denied. With directions to modify the decree in respect to the amount of interest allowed on commingled funds to accord as herein set forth, the case is remanded; and, as so modified, the decree is affirmed.

[11] While it is not necessary to determine separately the right of participation of the one-third interest of the minor (Eleanor Kleinschmidt) who was represented by a guardian ad litem, it is not out of place to state that such guardian had no power to waive or lessen in any respect the complete right of the minor without a specific order of the Court to that effect and no such order is here.

White v. Joyce, 158 U.S. 128, 146, 15 S. Ct. 788, 39 L.Ed. 921; Stolte v. Larkin, 8 Cir., 110 F.2d 226, 233; Campbell v. Campbell, 350 Mo. 169, 165 S.W.2d 851, 857; Spotts v. Spotts, 331 Mo. 917, 55 S. W.2d 977, 983, 87 A.L.R. 660; Gebhardt v. United Rye Co. of St. Louis, Mo.Sup., 220 S.W. 677, 679; Collins v. Trotter, 81 Mo. 275, 281; 27 Am.Jur. pp. 848-850, §§ 129, 130.